## MERIWETHER *v.* MUHLENBURG COUNTY COURT.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
DISTRICT OF KENTUCKY.

Argued January 5, 1887. — Decided January 31, 1887.

Following the decisions of the Supreme Court of Kentucky, this court
holds that the justices of the peace of Muhlenburg County, in that state,
do not form a necessary part of the county court when levying a tax to
satisfy a judgment against the county, under § 9 of the Act of the Legis-
lature of Kentucky, of February 24, 1868, amending the charter of the
Elizabethtown and Paducah Railroad Company.

MERIWETHER, the plaintiff in error, obtained a judgment in
the court below against the county of Muhlenburg, in the State
of Kentucky, for the amount of certain unpaid coupons of
bonds, issued by it in payment of a subscription to the capital
stock of the Elizabethtown and Paducah Railroad Company.
Execution having been returned "no property found to satisfy
the same or any part thereof," and the county court of the
county having refused to levy a tax sufficient to pay the
judgment, Meriwether filed the petition in this case against
the judge of that court, praying for a mandamus compelling
the levy and collection of such tax. The plaintiff based his
right to relief upon the ninth section of an act of the General
Assembly of Kentucky, approved February 24, 1868, amending
the charter of the Elizabethtown and Paducah Railroad Com-
pany. That section provided:

"That in case any county, city, town, or election district
shall subscribe to the capital stock of said Elizabethtown and
Paducah Railroad Company, under the provisions of this act,
and issue bonds for the payment of such subscription, it shall
be the duty of the county court of such county, the city coun-
cil of such city, and the trustees of such town, to cause to be
levied and collected a tax sufficient to pay the semiannual in-
terest on the bonds issued and the cost of collecting such tax,
and paying the interest, on all the real estate and personal

property in said county, city, or town, subject to taxation under the revenue laws of the state, including the amounts-owned by residents of such county, city, or town, or election districts, which ought to be given in under the equalization laws." *Sess. Acts* 1867–8, p. 622.

This proceeding having been instituted against the judge of the county court alone, a demurrer to the petition, on the ground of defect of parties, raised the objection that, within the meaning of the foregoing statute, the justices of the peace of the county must be a part of the court when making a levy for the purpose asked by the plaintiff. The court below, being of opinion that the point was well taken, sustained the demurrer. An amended petition was filed, stating among other facts, that there were no justices of the peace of the county; that the justices elected from time to time, and who had qualified, resigned their positions in order that there might be no officers in existence who could, under the theory of the defendant, levy the required tax. A demurrer to the amended petition having been sustained, and the plaintiff having elected not to amend further, the action was dismissed.

*Mr. Alexander P. Humphrey* for plaintiff in error. *Mr. W. O. Dodd, Mr. J. L. Dodd, Mr. John Mason Brown,* and *Mr. George M. Davie* were with him on the brief.

*Mr. T W. Brown* for defendant in error.

MR. JUSTICE HARLAN, after stating the case as above reported, delivered the opinion of the court.

The only question necessary to be considered is, whether the justices of the peace of Muhlenburg County constitute a necessary part of the county court when levying a tax to pay plaintiff's judgment.

The constitution of Kentucky, adopted in 1850, provided for the organization of a county court in each county, to consist of a presiding judge and two associate judges, any two of the three to constitute a quorum; with power in the General Assembly to abolish the office of associate judges whenever it

was deemed expedient, " in which event they may associate with said court any or all of the justices of the peace " elected in the several districts into which the county is divided. Constitution, Art. IV. It is also declared in the same instrument that " the General Assembly may provide, by law, that the justices of the peace in each county shall sit at the court of claims and assist in laying the county levy and making appropriations." Ib. § 37. The words " court of claims " are here employed to designate the county court when it sits for the purpose, among others, of ascertaining the claims against, and the expenses incurred by, the county, and of providing for their payment by appropriations out of the county levy — such levy being the annual tax imposed for county purposes, not upon property, but upon persons residing in the county, without reference to the value of their property. 1 Rev. Stat. Ky. 296, c. 26. The county court is also described as " the county court of levy and disbursements," when reference is made to its duty " to erect and keep a sufficient county jail." Ib. 329, c. 27, Art. 21, § 7.

The Revised Statutes provide that the county courts shall have jurisdiction to lay and superintend the collection and disbursement of the county levy; to erect, superintend, and repair all needful county buildings and structures; and " to superintend and control the fiscal affairs and property of the county, and to make provision for the maintenance of the poor." Ib. 327, c. 27, Art. XIX. They also provide that " the office of associate judge of the county court is abolished," and that " a county court shall be held in each county at the seat of justice thereof by a presiding judge of the court, on the days prescribed by law," except that " at the court of claims . . . the justices of the peace of the county shall sit with the presiding judge and constitute the court "; and " justices of the peace shall only compose a part of the court when it is engaged in laying the county levy, and in appropriating money and in transacting other financial business of the county." Ib. 328, Art. XXI, § 2.

The same provisions substantially are to be found in the General Statutes of the state which went into effect in 1873. Gen. Stat. Ky. 269, c. 27; Ib. 304, c. 28, Art. 15, 16, and 17.

It is clear that the levying and collection of a tax to meet a county subscription to the stock of a railroad company, is not a business connected with the laying of the county levy, or with appropriations of money out of such levy.    But it is insisted that it is a matter relating to the "fiscal affairs" of the county, and is "financial business of the county," the control or management of which belongs, under the law, to the county court, composed of the presiding judge and the justices of the peace.    On the other hand, the plaintiff in error contends, this case is taken out of the operation of the general statute, by the fact that the special statute under which the county made the subscription and issued the bonds in question imposes upon the county court, held by the presiding judge, the absolute duty of levying the necessary tax.

Upon this point there seems to be a settled course of decision in the highest court of Kentucky; and upon such a subject as the organization or composition of a tribunal established by the fundamental law of the state, those decisions are, at least, entitled to great weight.    *Burgess* v. *Seligman,* 107 U. S. 20, 34; *Claiborne County* v. *Brooks,* 111 U. S. 400, 410; *Norton* v. *Shelby County,* 118 U. S. 425.

The first case in the Court of Appeals of Kentucky upon this question is *Bowling Green and Madisonville Railroad Company* v. *Warren County,* 10 Bush, 711, decided in 1875.    That was a proceeding to compel the county court to execute and deliver bonds in payment of a subscription to the stock of the railroad company,— a subscription sustained by a majority of the legal voters at an election held under the order of the county court, composed of the presiding judge alone.    The defence was that the county court, held by that officer, the justices being absent, was without authority to call the election there in question.    The court, speaking by Pryor, J., after observing that, as a general rule, when reference is made to a county court, or the action of a county court, it is understood as a court presided over by the county judge alone, said:

"A county court, held by the county judge or by the judge in conjunction with the justices, has no power to impose such taxation as this on the people of the county or to submit the

question of taxation to the popular vote, without some special legislative enactment; and in the absence of any such original jurisdiction belonging to either mode of organization, it remains to be determined whether the legislative intent, to be gathered from the provisions of appellant's charter, and particularly the sixteenth section, was to empower the county judge alone to exercise this right, or to require that the justices of the county should be associated with him. If the direction of the legislature had been imperative on the county court to enter the order submitting the question of subscription to the people, there would be little difficulty in determining this question; for, if the county court had been deprived of all discretion and compelled to obey a mandatory act, it would be immaterial whether the county court, composed of the justices or the county judge, made the order, as either or both must obey.

" In this case the legislature seems to have departed from the usual course of legislation with reference to such charters, and instead of exercising its own judgment as to the interests of the people in this particular locality, or of permitting them primarily to do so, required that the county court, preliminary to a vote on the question by the people, should first, in its discretion, determine the propriety of such legislative action. This action on the part of the county court was certainly not judicial. The appellant had no right or claim on the people to make the subscription or upon the county court to order the vote. The company was empowered by this act to make a request only of the county court that it might in its discretion accede to or refuse. . . . . It was a matter of vital importance to the people of the county of Warren, as well as the other counties to whom such a proposition might have been made by appellant, that they should fully understand the nature of the burden they were about assuming, and the legislature in its wisdom saw proper to give them the benefit of the judgment of those who represented the various localities and interests in each county, in order that they might determine whether the benefits to be derived from the construction of this railway would be an equivalent for the large expenditure to be made."

So the mandamus was refused upon the ground that the special statute intended that the question of submitting a subscription to the vote of the electors should be determined, in the first instance, by the county court, composed of the judge and justices.

The same point again arose in the Court of Appeals of Kentucky in *Logan County* v. *Caldwell*, 1880, and in *Cook* v. *Lyon County*, 1884. Neither of these cases is reported in the printed volume of decisions, but a copy of the opinion in each has been submitted to us. The case of *Logan County* v. *Caldwell* involved the validity of a subscription to the capital stock of the Owensville and Russellville Railroad Co., and of the bonds issued in payment thereof — the subscription having been voted at a popular election called by the county court held by the judge alone. The court, speaking by Chief Justice Cofer, reaffirmed the rule announced in *Bowling Green and Madisonville Railroad Co.* v. *Warren County*, observing that it proceeded upon the idea that, as the justices of the peace are by law part of the county court in laying the levy, in making appropriations of money, and generally when the financial interests of the county are involved, it ought to be presumed, when a discretion is given by law to the county court in respect to a matter relating to the financial affairs of the county, that the legislature intended by the phrase "county court," that tribunal to which it had committed the management of the general financial interests of the county. Adhering to this rule, the court sustained the subscription and bonds of Logan County upon the ground that an act, amendatory of the charter of the company, and which was in force when the election was held, imperatively required the county court to make the subscription and issue the bonds, in accordance with the vote of the majority; and hence, as held in the former case, it was "immaterial whether a court composed of the justices or held by the presiding judge alone made the order, as either must obey."

In *Cook* v. *Lyon County* the question was as to the validity of certain bonds and coupons issued in conformity with a popular vote at an election called by the county court, held

by the presiding judge alone, upon the question of a subscription to the stock of the Elizabethtown and Paducah Railroad Company, *under the very act now before us.* The court said:

"It is urged that the bonds and coupons are not valid, because the county judge, in ordering the election to take the vote as to whether the county should subscribe stock to said road, and in making the subscription and issuing the bonds therefor, acted alone and without associating the justices of the county with him. The act in question provides that all this shall be done by the 'county court,' and contains no language from which it can be even inferred that the legislature intended that it should be done by the county levy or fiscal court of the county; and although there is some reason in the claim that when the term 'county court' is used as to fiscal matters, it refers to the fiscal court, yet, as a general rule, when reference is made to a county court, or the action of a county court, it means a court presided over by the county judge alone, and should be held to so mean when used in connection with fiscal matters if it relates to mere ministerial duties. Moreover, in this instance, the direction of the legislature to the county court to do these ministerial acts was imperative, and it is, therefore, immaterial whether it was done by the county judge alone, or by him and the justices, even admitting (as we do not) that a *bona fide* holder of the bonds can be affected by such matters."

Taking these decisions as the basis upon which to rest our judgment in this case, it only remains to inquire whether the provisions of the act of February 24, 1868, are mandatory in their character, or only invested the county court with a discretion in respect to the material matters involved in the subscription by Muhlenburg County. When the railroad company requests the county court of any county, through or adjacent to which it is proposed to construct the road, to subscribe, either absolutely or conditionally, a specified amount to its stock, the act provides that "the county court shall forthwith order an election to be held," &c. The sections authorizing subscriptions by precincts, cities, or towns are equally imperative. Secs. 5 and 6. When a county . . . subscribes

under the provisions of the act, "it shall be the duty of the county court . . . to issue the bonds of such county," &c., to be signed by the "county judge and countersigned by the clerk." Sec. 7. In case of a subscription by an election district in any county, "it shall be the duty of the county court of such county to issue the bonds of such district or districts in payment thereof," &c. Sec. 8. We have already referred to the ninth section, which provides that, upon a subscription by any county, "it shall be the duty of the county court of such county . . . to cause to be levied and collected a tax sufficient to pay the semiannual interest on the bonds issued and the cost of collecting such tax and paying the interest, on all real estate and personal property in said county," &c. On levying a tax as provided in the act, to pay the interest on bonds issued by a county, "it shall be the duty of the county court . . . to appoint three resident tax-payers . . . who shall be styled the Board of Commissioners of the Sinking Fund of such county." Sec. 10. If dividends upon the stock subscribed prove to be insufficient to enable the county to pay its bonds at maturity, new bonds may be issued; but if the county deems that course inexpedient, "it shall be the duty of the county court . . . to cause a tax to be levied and collected on all property in such county . . . subject to taxation," &c. And so of all the remaining sections of the company's charter.

It would be difficult, we think, to frame an act more mandatory in its character than that of February 24, 1868. None of its provisions leave room for the exercise of discretion by the county court in respect to any matter upon which it is required to act. The learned court below announced that, except for the fourth section of this act, it would decide — following the decisions in *Bowling Green* v. *Madisonville Railroad Company*, and *Logan County* v. *Caldwell* — that the "county court" in the company's charter meant a court held by the presiding judge alone. That section provides: "4. That the person acting as sheriff at the several precincts shall return to the clerk of the county court within (three) days after the day of such election the poll-books of their respective pre-

cincts, and on the next day thereafter the county judge and county clerk shall count the vote; and if it shall appear that the majority of those voting voted in favor of the subscription of stock as proposed, the county judge shall order the vote to be entered on the record, and the subscriptions to be made by the clerk on behalf of the county on the terms specified in the order submitting the question to a vote."

We are unable to concur in the suggestion that the use of the words "county judge," in the fourth section of the act, in connection with the direction that the vote be entered on the record, that is, upon the records of the county court, is inconsistent with the idea that "county court," as used in the company's charter, meant merely the county court, held by the judge thereof. As the counting must have been by individuals, not by a court, the requirement that the county clerk and county judge should perform that duty, and that the latter should cause the result to be entered on the records of the court, does not, we think, show an intention to invest the county court with any discretion whatever in ordering the election, or in issuing the bonds, or in levying taxes to pay the bonds and the interest thereon. In the absence of that discretion, it is the duty of the county court, held by the presiding judge alone, to levy the required tax. Such was the decision in *Cook* v. *Lyon County*, to which the attention of the court below does not appear to have been called.

The counsel for the defendant in error refer to § 2, Art. XVII, c. 28 of the General Statutes of Kentucky, page 306, (ed. Bullitt and Feland, 1881,) which provides that, "if under the provisions of any law hereafter enacted, it is required of the county court to submit to the qualified voters of the county, or to the qualified voters of any local community therein, the proposition to take stock in any company or to levy any tax other than for common school purposes; or, if, under any law hereafter enacted, it is required that the county court shall decide upon the issue of any bonds of the county, or of any district or local community therein, to any railroad or other company, it shall be the duty of the county judge to cause all the justices of the peace of such county to be summoned to at-

tend at the term of the court at which any such action is proposed to be taken, who shall be associated with the county judge and constitute the county court for the occasion."

It is sufficient to say that, as that provision, by its terms, only applies to laws "hereafter enacted," that is, enacted after the general statutes went into operation, it cannot affect the present case, which depends upon the construction to be given to an act passed in 1868.

As the court below erred in sustaining the demurrer to the original petition,

*The judgment is reversed, with directions to overrule that demurrer, and for such other proceedings as may be consistent with this opinion.*