RAILROAD COMMISSION OF OHIO v. WORTHINGTON.

(Circuit Court of Appeals, Sixth Circuit. May 2, 1911.)

No. 2,090.

1. COURTS (§ 405*)—FEDERAL COURTS—JURISDICTION OF CIRCUIT COURT OF APPEALS.

A decree entered by a Circuit Court on an ancillary bill filed by a receiver of that court for the protection of the property in his charge is appealable to the Circuit Court of Appeals, although it involves the construction or application of the Constitution; the jurisdiction of that court in such case being dependent on its jurisdiction of the original suit.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 1097–1103; Dec. Dig. § 405.*

Jurisdiction of Circuit Court of Appeals in general, see notes to Lau Ow Bew v. United States, 1 C. C. A. 6; United States Freehold Land & Emigration Co. v. Gallegos, 32 C. C. A. 475.]

2. COMMERCE (§ 34*)—POWER TO REGULATE—WHAT CONSTITUTES "INTERSTATE COMMERCE."

A so-called "lake cargo rate," made by a railroad company for the carriage of coal in car load lots from a mining district in Ohio to Huron and Cleveland, ports in that state on Lake Erie, which includes the loading of vessels with such coal for transportation to ports in other states on the Upper Lakes, is a rate for transportation in interstate commerce, and not subject to regulation by the Railroad Commission of Ohio.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. §§ 26, 82; Dec. Dig. § 34.*

For other definitions, see Words and Phrases, vol. 4, pp. 3724–3731.]

Appeal from the Circuit Court of the United States for the Northern District of Ohio.

Ancillary bill in equity by B. A. Worthington, receiver of the Wheeling & Lake Erie Railroad Company, against the Railroad Commission of Ohio. Decree for complainant, and defendant appeals. Affirmed.

W. D. Turner and T. H. Hogsett (U. G. Denman and Timothy S. Hogan, Attys. Gen., and Freeman I. Eagleson, on the brief), for appellant.

Squire, Sanders & Dempsey (W. B. Sanders and W. M. Duncan, of counsel), for appellee.

Before SEVERENS and KNAPPEN, Circuit Judges, and McCALL, District Judge.

SEVERENS, Circuit Judge. At the time when this bill was filed in the Circuit Court, there was pending therein a consolidated suit, cou-

stituted by the consolidation of a suit brought·by the National Car Wheel Company of New York against the Wheeling & Lake Erie Railroad Company, a corporation of Ohio, and another suit brought by the Central Trust Company of New York, a corporation of New York, against the same defendant. The object of the bill in the latter case was the foreclosure of a mortgage of the properties of the railroad company wherein the trust company was mortgagee. From the allegations in the bill now before us, we gather that the object of the bill of the car wheel company was the winding up of the affairs of the railroad company on the ground of its insolvency, the marshaling of liens upon its property, and the protection of all parties interested. From the nature of these suits, no other ground being suggested, it is inferable that the jurisdiction of the court depended in both cases upon the diverse citizenship of the parties.

Pursuant to the prayer of the bill in each of these two consolidated cases, B. A. Worthington was appointed receiver of "all and singular the property, assets, rights, and franchises of the Wheeling ·& Lake Erie Railroad Company, including all railroads and other property and assets, rights, and franchises of whatsoever kind and description and wheresoever situated, owned or operated by the said railroad company, authorizing and directing the said receiver to keep the railroads and other property of said the Wheeling & Lake Erie Railroad Company employed and used as the same were theretofore used, and to continue the operation of said railroads, and to institute and prosecute all such suits as might be necessary in the judgment of the receiver for the proper protection of the property and trusts thereby vested in him and of the business placed in his charge." And it is alleged·that the receiver thereupon "took possession of the said property, assets, and franchises of the Wheeling & Lake Erie Railroad Company, and ever since has been and is now in possession of and operating the said railroads and property under and pursuant to the orders of said court."

Under the authority of the foregoing order, the receiver filed this bill against the Railroad Commission of Ohio, alleging that prior to a certain recent date the railroad company had fixed, and for a long time had maintained, a rate, called a "lake cargo rate," of 90 cents per ton for the transportation of coal from a locality known as "No. 8 Mining District in Ohio" to Huron and Cleveland, ports in that state on Lake Erie, and unloading the coal from its cars into the holds of vessels, and distributing and "trimming" the coal in the holds and preparing in all things the cargo for its further transportation to distant ports on the Upper Lakes. Other coal transported to Huron or Cleveland, not intended for lake transportation, but intended to be thence distributed to nearby points, was charged with a rate of $1 per ton for the original transportation to Huron or Cleveland, as the case might be. But, on the complaint of shippers from the mining district that the rate of 90 cents per ton for the transportation of the lake cargo coal to Huron and Cleveland was unreasonably high, and ought to be reduced as much as 20 cents per ton, the Railroad Commission of Ohio, on due notice to the railroad company and a hearing of all

parties, held the complaint well founded, and on the 28th of February, 1910, ordered the rate to be reduced from 90 to 70 cents, and directed its order to be put in force by the railroad company from and after the 22d day of April following. The following paragraphs of the order show its substance and effect:

"It is therefore ordered that said defendants, the Wheeling & Lake Erie Railroad Company and B. A. Worthington as receiver thereof, be and each of them is hereby notified and required to cease and desist from charging, demanding, collecting, and receiving said excessive and unreasonable rate of 90 cents per ton f. o. b. vessel for the transportation of coal, car loads, from mines on the lines of said the Wheeling & Lake Erie Railroad Company in what is known as the No. 8 District in Ohio to the village of Huron, Ohio, and to the city of Cleveland, Ohio.

"It is further ordered that a rate of 70 cents per ton f. o. b. vessel, which the commission have found to be a just and reasonable rate to be charged for the transportation of coal, car loads, from said No. 8 District to the village of Huron, Ohio, and the city of Cleveland, Ohio, be substituted for said rate of 90 cents per ton f. o. b. vessel found by the commission to be unreasonable, which rate of 70 cents per ton f. o. b. vessel, as aforesaid, shall be charged, imposed, observed, and followed in the future by said the Wheeling & Lake Erie Railroad Company and said B. A. Worthington, receiver of said company, and by each of them, in lieu of and in substitution of said rate of 90 cents per ton f. o. b. vessel, found by the commission to be unreasonable."

The purpose of the receiver's bill is to restrain the enforcement of this order of the commission and from instituting any suit or proceeding to compel obedience to it. To this end the receiver, after stating in his bill the conditions above stated, alleged a variety of facts and circumstances, including the cost of transportation as compared with the rate enjoined by the commission, as exhibited by the company's books and records, which are set forth in detail, all tending to show, as the receiver claims, that the order of the commission is confiscatory, and, when compared with other rates charged and enforced by other railroad companies for similar services in nearby localities, discriminatory. Upon these allegations of fact, of which the substance has been stated, the receiver charged as matter of law that the order of the commission was void for the following reasons:

First. Because it "directly affects and interferes with this interstate commerce engaged in by your orator, over which the said Railroad Commission of Ohio has no authority or power, inasmuch as the regulation of such commerce is vested in the federal government under the provisions of the Constitution of the United States."

Second. Because it "deprives the owners and persons interested in the property constituting the receivership estates of their property without due process of law, denies to them the equal protection of the law, and takes private property for public purposes without due compensation."

Third. Because "the findings of the said commission are contrary to the facts, and are not supported by the testimony offered by the parties at the time of the hearing before said commission, and the said commission, in its said findings of fact and conclusions of law, has failed to give due and proper consideration to the traffic conditions existing upon your orator's line of railroad. The said commission has denied to your orator the right to recognize the effect of competi-

tion on rates, and has failed to distinguish between through and local rates, all as will appear from the testimony taken before said commission, which is tendered to the court for inspection upon the filing of this bill of complaint."

In addition to the Railroad Commission of Ohio, several other persons were made defendants, such as mining companies and their representatives and shippers of coal from the locality above mentioned, whom it is unnecessary to further regard, because as to all such other defendants the bill was dismissed, leaving the Railroad Commission as the sole defendant; and in that form the suit proceeded. The Railroad Commission thereupon answered the bill. It is only necessary, to the determination of the questions we propose to consider, to say that the commission admits the making of the order in question, as stated in the bill. The whole controversy turns upon the question whether the Railroad Commission had authority to make the order. If it had not, all questions which relate to its merits become immaterial.

At the hearing in the Circuit Court, on the pleadings and proofs, Judge Tayler presiding, it was (as appears from his opinion sent up with the record) found, upon a recital of the facts as gathered from the evidence, that the rate of 70 cents per ton was intended to apply to lake cargo coal destined for transportation to the Upper Lake ports —that is, to ports in other states—and to such transportation only. We are satisfied, upon an examination of the evidence upon that point, that the conclusion of the learned judge was correct. It was thereupon decreed that the order fixing such rate was not within the power of the Railroad Commission of Ohio, and was therefore void, and an injunction was ordered to issue restraining the commission from attempting to enforce it. The case has been brought here by an appeal taken by the defendant, the Railroad Commission of Ohio.

[1] The first matter to be attended to is that of a motion made by the appellee to dismiss the appeal, "on the ground that the court has no jurisdiction to entertain it, because the question involved is whether or not the order of the Railroad Commission of Ohio complained of is in contravention of the Constitution of the United States." We think the motion should be denied. It is based upon the erroneous conception that the appellate jurisdiction of the case is the same as that applicable to cases of original bills. But this is the case of a bill which is ancillary to the original suit, and the jurisdiction of the Circuit Court to entertain it depended upon its jurisdiction in those suits. They were brought by the receiver for the protection of the interests of the railroad company whose properties were in the hands of the court for administration. In such a case the court does not look either to the citizenship of the parties to the ancillary suit nor to any other peculiar matter affecting its jurisdiction. It may be a case altogether devoid of those conditions which are necessary to the jurisdiction of an original bill. Pope v. Louisville & N. R. R. Co., 173 U. S. 573, 19 Sup. Ct. 500, 43 L. Ed. 814; St. Louis, K. C. & C. R. R. Co. v. Wabash R. R. Co., 217 U. S. 247, 30 Sup. Ct. 510, 54 L. Ed. 752; Loveland on the Appellate Jurisdiction of the Federal

Courts, § 158.   It may be proper, though it is unnecessary, to say that, even if this were an original bill, the claims made by it are not all of a character which require the appeal to be taken to the Supreme Court under the provisions of section 5 of the act creating the Court of Appeals.   Act March 3, 1891, c. 517, 26 Stat. 827 (U. S. Comp. St. 1901, p. 549).   Some of the claims made are of that character, but one of them, the third, at least, is not; and if it stood alone the appeal must have been taken to the Circuit Court of Appeals.   In such case the appellant has his election to take the case to either court, where all the questions involved will be considered.

[2] Coming, then, to the merits, we observe that, while such an order as that made by the Railroad Commission might have been a valid exercise of its power before the time when the federal government undertook the exercise of its own authority granted by the commerce clause of the Constitution, as it has done in recent years, yet in view of the legislation by Congress concerning the duties and liabilities of railroad companies engaged in interstate commerce, the power of the states has been greatly circumscribed.   To the extent that Congress has by valid legislation taken control of the subject of interstate commerce and regulated it, the control over it by the states must give way to the exercise of the paramount authority.   Louisville & Nashville Rd. Co. v. Eubank, 184 U. S. 27, 22 Sup. Ct. 277, 46 L. Ed. 416.   The regulation by one governmental authority would be inconsistent with its regulation by another.

We think it unimportant to inquire whether the Interstate Commerce Commission has hitherto prescribed any rates for the particular service which is the subject of this suit.   It is enough that the matter is within its control, and for aught we know that Commission may have not deemed it necessary to take action upon the subject, being satisfied with existing conditions.

Upon the question whether the commerce to which this rate of 70 cents as prescribed by the Railroad Commission of Ohio is applied is interstate, a number of decisions are cited by counsel for the respective parties, and undoubtedly they are not all of them in accord.   It is not necessary to analyze them, or to point out the drift of each of them severally.   We think there is little or no support to the contention which the counsel for the appellant here make against the finding and decree of the court below.

In the decision by this court in the case of United States v. Geddes, 131 Fed. 452, 65 C. C. A. 320, we carried the limit of the state's jurisdiction as far as has been done in any other decision.   It was rested upon the peculiar circumstances of that case, and particularly upon the facts that the railroad company's contract for transportation had been completely performed when it deposited the goods at its own station, and it had nothing to do and was in no wise concerned with their future disposition, whether they should be taken away by the consignee or some other railroad company by his authority.   These special facts upon which the decision turned do not exist here.   By the very terms of the service which the Wheeling & Lake Erie Railroad Company contracted to perform, it was required to deliver the

coal into vessels provided to receive it and to load the vessels with the coal properly distributed in their holds and the cargo trimmed for its further transportation to the ports of other states. And this was included in the service for which the commission fixed the rate of 70 cents per ton. It was a service which, if the transportation had been ended by a delivery on its own docks or into its own warehouse, would have been required to be performed by the subsequent carrier. Thus it participated in making the connection for the continuous transportation of the coal from the mines to its ultimate destination at the Upper Lake ports.

We are constrained to agree with the court below in its conclusion that the order of the commission was beyond its powers. The law of Ohio defining its authority confined its functions to intrastate transactions, and gave it no authority to interfere with interstate commerce. The fault is not in the law, but in the commission's failure to observe the limitation imposed by it. It follows that its order was not one sanctioned by the laws of the state, and derived no force or validity from its assumption of a power not delegated to it by the Legislature. It is only when such quasi legislative bodies are acting within the scope of their authority that their orders have the quality of legislation, or may properly be said to be the laws of the state, as they are sometimes characterized. Memphis v. Cumberland Telephone Co., 218 U. S. 624, 31 Sup. Ct. 115, 54 L. Ed. 1185: Louisville v. Cumberland Telephone Co., 155 Fed. 725, 84 C. C. A. 151, a case decided by this court. There is not here, therefore, a controversy as to whether a state law is in conflict with the Constitution or any law of the United States.

The decree of the Circuit Court must be affirmed.