TUCKER et al. v. HUBBERT.

(Circuit Court of Appeals, Sixth Circuit.   June 4, 1912.)

No. 2,261.

1. COURTS (§ 264*)—JURISDICTION OF FEDERAL COURTS—ANCILLARY PROCEED-INGS.

A proceeding in mandamus in a federal court to enforce payment of a judgment rendered therein is ancillary to the original action and within the jurisdiction of the court, regardless of the citizenship of the parties.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 801; Dec. Dig. § 264.*]

2. JUDGMENT (§ 519*)—COLLATERAL ATTACK.

In a proceeding in a federal court for a writ of mandamus to enforce payment of a judgment of such court, the validity of the judgment cannot be drawn in question.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 963; Dec. Dig. § 519.*]

3. COURTS (§ 355*)—JURISDICTION OF FEDERAL COURTS—POWER TO ENFORCE JUDGMENT—STATE STATUTE.

The states cannot annul or abridge the jurisdiction of the federal courts as to controversies between citizens of different states, and, having jurisdiction to render a judgment, such a court has the power to enforce it by appropriate process, notwithstanding a statute providing a different remedy in a state court.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 935, 936; Dec. Dig. § 355.*

State laws as rules of decision in federal courts, see notes to Wilson v. Perrin, 11 C. C. A. 71; Hill v. Hite, 29 C. C. A. 553.]

4. COURTS (§ 355*)—FEDERAL COURTS—ENFORCEMENT OF JUDGMENT—STATE STATUTE.

The provisions of Special Act Ky. March 18. 1878 (Acts 1877–78, vol. 1, c. 483. § 2), authorizing the state circuit court or in vacation the circuit judge of the district to levy taxes and appoint collectors to raise money necessary to pay judgments rendered by any court of competent jurisdiction on past-due coupons from the bonds of a county, conceding its validity, which is doubtful under the decisions of the state Court of Appeals, are not exclusive of other remedies for the collection of such judgments, and under Ky. St. §§ 1839, 1840, which vest the fiscal court of each county with power to levy and collect taxes for the payment of any county indebtedness, either principal or interest, a federal court, which has rendered a judgment against the county on past-due coupons, may enforce the same by mandamus requiring the fiscal court to levy and collect a tax for its payment.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 935, 936; Dec Dig. § 355.*

Conflict of jurisdiction of federal courts with state courts, see note to Louisville Trust Co. v. City of Cincinnati, 22 C. C. A. 356.]

5. MANDAMUS (§ 15*)—ENFORCEMENT OF JUDGMENT AGAINST COUNTY—LEVY AND COLLECTION OF TAX.

It is not a legal objection to a writ of mandamus issued by a federal court which has rendered judgment against a county, requiring the county judge to direct the sheriff or collector appointed by him, when collecting other county taxes, to collect a special tax levied to pay the judg-

ment, that such requirement will embarrass the county in the collection of its current revenue.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. §§ 47, 49; Dec. Dig. § 15.*]

6. MANDAMUS (§ 28*)—ENFORCEMENT OF JUDGMENT AGAINST COUNTY—COLLECTION OF TAX—DISCRETION.

Such writ is not invalid, as controlling the discretion of the county judge, where it is made his duty by statute to appoint the collector to collect the taxes legally levied, and the writ does not purport to affect his discretion in the selection of such collector.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. § 64; Dec. Dig. § 28.*]

7. MANDAMUS (§ 14*)—ENFORCEMENT OF JUDGMENT AGAINST COUNTY—DEMAND.

Where a judgment creditor of a county made due demand upon the proper officers of the county to levy and collect a tax to pay his judgment, a second demand is not necessary to entitle him to a writ of mandamus to compel such action because new officers have been elected.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. §§ 44–46; Dec. Dig. § 14.*]

In Error to the Circuit Court of the United States for the Western District of Kentucky.

Petition by Marc Hubbert, for the use and benefit of Lewis Apperson, against E. N. Tucker and others, for a mandamus. From an order granting the writ, defendants bring error. Modified and affirmed.

J. R. Sanders and Hugh B. Fleece, for plaintiffs in error.
Richards & Harris, for defendant in error.
Alex P. Humphrey, James S. Pirtle, and John Bryce Baskin, amici curiæ.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

WARRINGTON, Circuit Judge. [1, 2] This is an ancillary proceeding in mandamus to enforce payment of a judgment for $2,963.99. The judgment was recovered in the court below, April 10, 1899, in a suit brought by Marc Hubbert against the county of Taylor, Ky. The jurisdiction of the court below was challenged by special demurrer to the petition for mandamus and later by answer after the demurrer was overruled. One ground stated in the answer is that the controversy is between citizens of the same state, and a demurrer to the answer was sustained. Although assignments of error appear in the record, to the rulings on these demurrers, they were not relied on in argument and are not in the briefs. The proceeding was begun in the name of Lewis Apperson (alleged purchaser and owner of the judgment) as plaintiff, a citizen of Kentucky, against defendants, citizens of Taylor county, and alleged to constitute its fiscal court. However, the requisite diversity of citizenship in the principal suit is practically admitted by the answer here; and, since this proceeding is but a substitute for an execution to enforce payment of the judgment (Kinney v. Eastern Trust & Banking Co., 123 Fed.

297, 300, 59 C. C. A. 586 [C. C. A. 6th Cir.]), it may be maintained without regard to the citizenship of the present parties (Railroad Commission of Ohio v. Worthington, 187 Fed. 965, 968, 110 C. C. A. 85 [C. C. A. 6th Cir.]). It is also sought by the answer to question the validity of the judgment; but nothing that contradicts the judgment can be alleged or regarded in this proceeding. Harshman v. Knox County, 122 U. S. 318, 7 Sup. Ct. 1171, 30 L. Ed. 1152; Kaill v. Board of Directors, 194 Fed. 75, 76 (C. C. A. 5th Cir.).

By amendment made to the present petition, Marc Hubbert was brought in as coplaintiff below and as suing for the use and benefit of Lewis Apperson. The defendants below were then J. W. Cloyd, county judge, and the justices of the peace of Taylor county, composing the fiscal court. March 19, 1909, a peremptory order was entered requiring defendants, as such fiscal court, to levy a tax sufficient to pay the judgment, and to cause the tax to be collected in a mode specified. April 22, 1909, the fiscal court reported that it had levied a sufficient tax and provided for its collection; but on October 14, 1909, it reported that collection of the tax had failed. March 14, 1910, plaintiffs amended the petition by alleging that, since the judgment of mandamus, the terms of office of the county judge and justices of the county had expired, asking that their successors be made parties, that process issue, and all necessary orders be made to collect the tax. Summons was issued and personal service made upon the substituted defendants, viz., E. N. Tucker, county judge, and six justices named. June 15, 1911, the court on motion ordered that E. N. Tucker, county judge—

"when he next appoints a sheriff, collector, or other officer to collect the county revenue of Taylor county, to embrace in the same order of appointment a direction to the officer appointed to collect both the levy heretofore made to pay the judgment in this case and the levy made or to be made for county purposes; and to require of such appointee one bond to cover the collection of each and all of said taxes."

[3] The court retained the cause for further enforcement of the judgment. The plaintiffs in error contest the validity of the levy so made and the order entered for its collection. The contention is that by special act, approved March 18, 1878, it is the duty of the circuit court, or, in vacation, of the circuit judge of the district, on application, to make an order, based on the next preceding assessment, levying a tax and appointing a collector to raise the money sufficient to pay the judgment (volume 1, Acts 1877–78, p. 555, § 2); and that, since the petition fails to allege that this remedy has been exhausted or is inadequate, the present remedy must fail. The features of this special act that require the most attention in this case are: It provided a funding scheme through the issue of bonds to take up all bonded indebtedness outstanding in 1878; also for payment of the accruing interest coupons (1) through levies made by the county court, held by *the county judge and justices,* and (2) by orders to be made by the circuit court, or, in vacation, by the circuit judge of the district, levying taxes and appointing collectors to raise money to pay judgments, rendered by any court of competent jurisdiction, upon past-due coupons.

The present judgment was based on past-due coupons of bonds issued pursuant to this special act; and those bonds had been used to take up certain of the county's earlier bonds which it had delivered in payment of a subscription it had made to stock in the Cumberland & Ohio Railroad Company. Volume 1, Acts 1869, pp. 463, 471. It must therefore be conceded that a remedy is in terms given by the special act to enforce the judgment in the state circuit court, and that no showing is made that plaintiffs below have ever sought to avail themselves of that remedy. But if that remedy be treated as both valid and adequate, is it the only one that is open to judgment creditors? There is nothing to show that the parties contracted for that remedy solely, and neither is entitled to restrict the other to it upon that theory. Hubbert v. Campbellsville Lumber Co., 191 U. S. 75, 24 Sup. Ct. 28, 48 L. Ed. 101. Have the plaintiffs then a remedy within the federal jurisdiction? It is, of course, not claimed that the existence of this state remedy could have been used to prevent the institution of the suit and recovery of the judgment in the court below; for it has long been settled, as to controversies between citizens of different states, that the states cannot annul or abridge the jurisdiction of courts of the United States. As Chief Justice Chase said in Mercer County v. Cowles, 7 Wall. 118, 122, 19 L. Ed. 86, "no statute limitation of suability can defeat a jurisdiction given by the Constitution." See, also, Campbellsville Lumber Co. v. Hubbert, 112 Fed. 721, 50 C. C. A. 435 (C. C. A. 6th Cir.); Hyde v. Stone, 61 U. S. 170, 175, 15 L. Ed. 874; Blake v. McClung, 172 U. S. 255, 19 Sup. Ct. 165, 43 L. Ed. 432. The general rule is that power in a federal court to render judgment includes the power in that tribunal by proper process to enforce the judgment. Phelps v. Mutual Reserve Fund Life Ass'n, 112 Fed. 453, 458, 50 C. C. A. 339, 61 L. R. A. 717 (C. C. A. 6th Cir.), affirmed in Mutual Reserve, etc., Ass'n v. Phelps, 190 U. S. 147, 159, 23 Sup. Ct. 707, 47 L. Ed. 987.

[4] It is insisted for plaintiffs in error, however, that certain statutes of the state, like section 1882, forbid the fiscal court to levy a tax "to pay any railroad bonded indebtedness or any interest on such indebtedness," and further that this court so decided in Guthrie v. Sparks, 131 Fed. 443, 65 C. C. A. 427; and counsel for the other side concede this by contending that the case was erroneously decided and should be overruled. The decision in Guthrie v. Sparks—like that in Meriweather v. Muhlenburg County Court, 120 U. S. 354, 7 Sup. Ct. 563, 30 L. Ed. 653—was based on a special act of the state of Kentucky, approved February 24, 1868 (volume 1, Acts 1867–68, 'p. 622). That act in terms authorized the Elizabethtown & Paducah Railroad Company to set in motion a mandatory plan for procuring subscriptions to its capital stock by Muhlenburg county. Upon request of the company, the county court was required to order an election, and, if a majority favored subscription, the county judge was directed to order subscription to be made by the clerk on behalf of the county; and thereupon the county court was required to issue county bonds in payment of the subscription and to cause taxes to be levied and collected sufficient to pay the semiannual interest accruing

on the bonds and ultimately to redeem the bonds, either by the issue and sale of new bonds or by causing a tax therefor to be levied.

In the Guthrie Case it was sought by mandamus to enforce a judgment rendered upon bonds which had been issued under this special act for Muhlenburg county; the action being against Sparks, as presiding judge of the county court, and Blackwell, as sheriff. It was averred that it was the duty of the county, by its presiding judge, to levy a tax to pay such bonds, but that the judge refused. The prayer was for mandamus commanding Sparks, as county judge, to levy a tax sufficient to pay the judgment and to order the sheriff, or other officer acting in his place, to qualify, give bond, collect the levy, and pay the judgment. Demurrer of Sparks to the petition was sustained upon the ground that the power of assessing the tax was not in the county court, but in the fiscal court. Guthrie amended his petition by setting up reasons why the fiscal court was not authorized to levy the tax, and praying as in his original petition. To this a demurrer was sustained; and Guthrie sought to file a second amended petition asking, without waiving the claims and allegations of the original and first amended petitions, to have the justices of the peace of the county made parties, who, with Sparks, composed the fiscal court; and, upon averments appropriate to meet the court's views concerning the powers of the fiscal court, he again prayed as in the original petition and also, if that relief could not be given, that a writ issue commanding the fiscal court to convene and levy a tax sufficient to pay the judgment and to direct its collection. The trial court, believing the second amendment to be a departure from the cause of action set up in the original and first amended petitions, declined to allow the second amended petition to be filed. When the case reached this court, the question presented by the record—aside from the refusal below to permit the second amended petition to be filed, which does not seem to have been considered here—was whether under the Muhlenberg county act the plaintiff was entitled to a mandamus against the county court, not the fiscal court. This court, following the decision in the Meriweather Case, decided that Guthrie was entitled to the writ against the county court.

The question of two subsisting remedies—one through coercion of the county court and the other of the fiscal court—does not appear to have been suggested or considered either below or here; and such a question could not have arisen in the Meriweather Case, because that case was decided before the adoption of the new Constitution. Further, when the question actually involved and decided in the Guthrie Case is remembered, it is not easy to see why a conclusion that the special remedy survived adoption of the new Constitution and enactment of certain statutes under it was at bottom inconsistent with the creation of an additional remedy, especially if the two remedies were not inherently contradictory and were designed alike to accomplish a common end; nor why the judgment debtor should not be allowed the benefit of the one he prefers. We are not convinced that either court would have rejected such a proposition if it had been presented. Indeed, there are several reasons why we think this

case is not ruled by the decision in the Guthrie Case. Strictly speaking, the provision of section 1882 (set out below), respecting "railroad bonded indebtedness," may not be applicable to the bonds on which the present judgment is based. These bonds were issued in compromise settlement of earlier bonds representing railroad indebtedness. Some possible reasons for excluding from the power of the fiscal court old railroad debts in controversy and dispute would not be applicable to a 50 per cent. settlement of that controversy. However, this point was not argued before us, its decision is not necessary, and we express no opinion as to its force. The special remedy urged in the present case, as exclusive of any other remedy, obviously differs from the one held to exist in the Guthrie Case; here it is in the circuit court, there it was in the county court.

The power vested in the circuit court is claimed to be violative of the Constitution of Kentucky. Plainly, this question was not involved or decided in either the Meriwether Case or the Guthrie Case. In Muhlenberg County v. Morehead, 46 S. W. 484, 20 Ky. Law Rep. 376, 377, a proceeding in mandamus to enforce a judgment was under consideration, and it appeared that the judgment had been recovered on certain coupons for interest on bonds issued by the county. The act under which the bonds were issued was passed March 18, 1878, and is similar in a number of respects to the special act now in question. Section 19 of the special act involved in the Morehead Case imposed upon the county judge alone (in case there were no justices of the peace in commission, or in case a majority of them refused to act or concur with him) the duty to levy the taxes provided for paying the bonds. Section 20 provided that if the county court and justices, or the judge alone, should fail on demand to levy and collect the tax the circuit court, or judge thereof in vacation, should levy the tax and have it collected (volume 1, Acts 1877–78, pp. 601, 611). One contention was that, since, it was not averred that the circuit court had been applied to, mandamus would not lie, because every remedy provided by the act had not been exhausted. Judge Hazelrigg, in announcing the opinion of the court, said:

"The answer to this contention is that the provisions of the act attempting to impose on the circuit court or judge thereof the duty of levying and collecting taxes is unconstitutional and void. Those duties and powers are legislative in their character and cannot be conferred under our Constitution (sections 27 and 28) upon a strictly judicial tribunal or officer. This was authoritatively determined in Pennington v. Woolfolk, 79 Ky. 13."

It is to be observed of that decision that the act in question was, like the act involved in the present case, passed prior to the date of the adoption of the new Constitution, and that sections 27 and 28, cited in the opinion, are provisions of the new Constitution; but those sections are the same as sections 1 and 2, art. 1, of the Constitution then in force (Carroll's Stat. [Ed. 1909] pp. 67, 94). The court said in Pennington v. Woolfolk (referred to in the Morehead decision) that "the power to impose taxes is legislative, and cannot be conferred, under our Constitution, upon a strictly judicial tribunal or officer," but that the county court "is not an exclusively judicial

tribunal." 79 Ky. 16. See, also, Baldwin v. Shine, Presiding Judge, 84 Ky. 502, 514, 2 S. W. 164. Just why the decision in the Morehead Case should not be accepted as the law of that state has not been made clear. In Campbellsville Lumber Co. v. Hubbert, 112 Fed. 721, 50 C. C. A. 435, the right under the Constitution to vest similar power in the Circuit Court was assumed for the purposes of the case, and was conceded for like purposes by the Supreme Court when the case was affirmed. 191 U. S. 75, 24 Sup. Ct. 28, 48 L. Ed. 101, before cited. However, it was said by this court, in the case of Campbellsville Lumber Co., 112 Fed. 721, 50 C. C. A. 435, that when the Legislature deputes to a court power to levy and collect a tax to pay a judgment rendered by it, "the power has been exercised without question," and, moreover, the general rule is not to pass upon the constitutional validity of a legislative act unless it be absolutely necessary (Chicago, etc., Ry. Co. v. Wellman, 143 U. S. 345, 12 Sup. Ct. 400, 36 L. Ed. 176); and all we need to say now of the remedy relied on to defeat the order and levy made in this case is that the remedy is of doubtful validity; and we have been constrained to refer to the Morehead decision as one of the reasons why we believe we are bound to consider whether there is not also an available remedy in the court below for enforcing the judgment.

We come to the question whether, after all, the two remedies may not be regarded as subsisting—the one in terms given in the state circuit court and the other sought and granted in this case. By paragraph 144 of the new Constitution, fiscal courts are required and "may consist of the judge of the county court and the justices of the peace." Carroll's Ky. Stat. (Ed. 1909) p. 123. In October, 1892, the General Assembly provided that each county should have a fiscal court, consisting of the judge of the county court and the justices of the peace of the county. Section 1833, p. 826, Id. It will not escape notice that the officials composing this court are the same as those called for by the special act here involved, except the circuit court. It was further enacted that the fiscal court should have jurisdiction to levy each year for county purposes a poll tax not exceeding $1.50 and an ad valorem tax not exceeding 50 cents on each $100—

"unless an additional tax be required to enable the county * * * to pay the interest on and provide a sinking fund for the extinction of indebtedness of the county" created prior to September 28, 1891, and "for that purpose the fiscal court shall have jurisdiction to levy such additional tax as may be authorized by law in force prior to" September 28, 1891; "and shall superintend the collection of all such tax." Section 1839, Id.

And provision was also made that the fiscal court—

"shall have jurisdiction of all such other matters relating to the levying of taxes as is by any special act now conferred on the county court of levy and claims." Section 1840, Id.

It is true that on April 18, 1892, six months prior to the enactment of the provisions just referred to, the General Assembly passed an act giving similar powers to those contained in section 1839 respecting

levies of a poll tax and ad valorem taxes, but qualifying the power by these words:

"But this act shall not be construed so as to authorize the court of claims or, fiscal court of any county to levy a tax to pay any railroad bonded indebtedness or any interest on any such indebtedness." Section 1882, Id.

Despite this provision and what was said of it in the Guthrie Case, we are unable effectively to distinguish the instant case (as respects its dependence on the power of the fiscal court) from the ruling in Bonta v. Fiscal Court of Mercer County (decided 1911) 144 Ky. 241, 242, 137 S. W. 1084, 1085. It is true, as counsel say, that the learned judge announcing the opinion stated in substance that the single question was whether the fiscal court had power to make a levy of 10 cents on each $100 worth of taxable property "for the purpose of building a new courthouse, or repairing the present one, without submitting the matter to a vote of the people." The county levy had been made, and its items amounted to 60 cents on each $100, which was 10 cents per $100 in excess of the prescribed limit. It is to be observed that one of the items was "for railroad debt fund 10 cents," and the court said of this:

"The levy of 10 cents for railroad fund was to pay an old bonded, railroad debt created by the county before the adoption of the present Constitution of the, state; excluding this item of the levy, which section 157 of the Constitution permits to be done, the total levy would be 50 cents on each $100 worth of taxable property, and therefore within the limit fixed by section, 157 of the Constitution."

The courthouse levy was precisely the same in amount as that of the railroad levy, and, if the fiscal court was without power to make the railroad levy, no question could have arisen about the courthouse levy. It is pointed out in the opinion that section 157 of the Constitution imposes certain tax limitations on counties, etc., providing (144 Ky. 243, 137 S. W. 1085):

"* * * For counties and taxing districts, fifty cents on the $100; unless it should be necessary to enable such * * * county * * * to pay the interest on, and provide a sinking fund for the extinction of indebtedness contracted before the adoption of this Constitution. No county * * * shall be authorized or permitted to become indebted, in any manner or for any purpose to an amount exceeding, in any year, the income and revenue provided for each year, without the assent of two-thirds of the voters thereof, voting at an election to be held for that purpose. * * *"

No item of the levy had been submitted to the voters; and both the railroad tax and courthouse tax could not stand, unless the excess was justified by the railroad tax. Say the court (144 Ky. 243, 137 S. W. 1085):

"It is manifest that this section (157) as well as section 1882 (quære, section 1839), Kentucky Statutes, permits the fiscal court of the county to levy an ad. valorem tax not to exceed 50 cents on the $100 worth of taxable property in the county, exclusive of what may be levied for school purposes, and to pay the interest on and create a sinking fund for the extinction of any indebtedness contracted before the adoption of the present Constitution, to be used, as declared by section, 1882, * * * 'to pay off the existing current indebtedness, and to defray the current and necessary expenses of the county.'

"Certain other powers are specifically conferred upon the fiscal court of the various counties of the state by section 1840, * * * which provides: 'The fiscal court * * * shall have jurisdiction of all such other matters relating to the levy of taxes as is by any special act now conferred on the county court of levy and claims.'"

This is the latest expression on this subject of the court of last resort of the state; and, if we are not bound by the decision, we are impressed by its evident weight. As Justice Harlan said in the Meriwether Case, when speaking, it is true, of a settled course of decision in Kentucky (120 U. S. 357, 7 Sup. Ct. 565, 30 L. Ed. 653):

"* * * Upon such a subject as the organization or composition of a tribunal established by the fundamental law of the state, those decisions are, at least, entitled to great weight. Burgess v. Seligman, 107 U. S. 20, 34 [2 Sup. Ct. 10, 27 L. Ed. 359]; Claiborne County v. Brooks, 111 U. S. 400, 410 [4 Sup. Ct. 489, 28 L. Ed. 470]; Norton v. Shelby County, 118 U. S. 425 [6 Sup. Ct. 1121, 30 L. Ed. 178]."

Conceding, then, that the remedy furnished by the special act is available, we may safely affirm that the other also is. There is nothing inconsistent in the theory of two remedies, where, as here, neither is apparently exclusive of the other. United States v. Wong You, 223 U. S. 67, 32 Sup. Ct. 195, 56 L. Ed. ——. The special act is liberal in remedial provision for the security holder, and nothing contained in the new system can rightfully be claimed by the county to be in derogation of such provision. Either remedy was therefore open to the plaintiffs below; and, of course, it is futile to say that plaintiffs must fail in the choice of one without first exhausting the other. It follows that the levy made by the fiscal court is valid. This would seem to be true also according to provisions of the special act, as well as those of the later general taxing acts. We have seen that the fiscal court is made up of the same officials as those who were charged by the special act with the duty of levying taxes to pay past-due coupons, except the circuit court. The officials composing the fiscal court are the same as those constituting the old court of claims; and this latter court, variously named (Meriwether Case, 120 U. S. 356, 7 Sup. Ct. 564, 30 L. Ed. 653), was charged with the duty of "laying the county levy" between the date of the special act in question and that of the present Constitution (Gen. Stat. 1873, p. 306; volume 1, Acts 1875–76, p. 1). The action of the fiscal court in making the judgment levy was unanimous. It included the county judge, as presiding judge, as also the justices of the peace of the county; and so embraced the judge's action so far as that alone was either sufficient or necessary. It would therefore seem like sacrificing substance to form to suffer the official name of the body levying a judgment tax to vitiate the performance of such a duty simply because the body did not assemble and act under another official name; and the same is true where it is sought to vitiate the act because the justices of the peace were associated with and acted with the judge, since his own act was included in the unanimous action and would have been sufficient if he had performed his act alone. The test of this is that the subject-matter of the act, and the act itself, are identical and fall within the admitted power of these offi-

cials collectively, or under that of one of them, according to the official name employed in discharging the duty. But in view of the decision in the Bonta Case, we need not pursue this.

Objection is made to the last order respecting collection of the levy. It is said that the county judge, as such, is not a party to the proceeding. We have seen that an amended petition was filed alleging that the terms of office of the county judge and justices of Taylor county had expired, and that certain named persons had been elected and qualified in their places, among whom was E. N. Tucker, county judge. The prayer was that they be made parties and process issue against them; and after summons and due return Tucker appeared and answered as county judge, admitting that he had been elected and qualified to the office named.

[5] It is urged that the effect of the order will be to obstruct, if not to prevent, the collection of the ordinary county revenues needed for current uses. True, it in terms provides for imposing upon the collector of those taxes the duty at the same time to collect the tax levied to pay the judgment. If this will obstruct or prevent collection as stated, it will not be because the county is not legally obligated to pay the judgment; it will be because some persons do not wish to pay the tax. This is not a legal excuse. Nor are we able to perceive any legal reason, and none has been stated, why the taxes needed for current uses, and the tax required to pay this judgment may not be united for purposes of collection. There can be no difference in moral obligation between a debt incurred for a current purpose, and this debt; for the validity of the bonds is not questioned. The funding act under which the bonds were issued prohibited exchanging for or purchasing the old bonds at over 50 cents on the dollar; and presumably they were so obtained. In Commonwealth v. Wade's Adm'r, 126 Ky. 791, 802, 104 S. W. 965, 968, under circumstances kindred to these, the Court of Appeals fitly said:

"It seems to us high time that it should be taught as a practical lesson, as well as a theory, that there are none so high as to be above the restraints of the law, or so low as to be beneath its protection."

[6] It is contended that the effect of the writ will be to control the discretion of the county judge respecting the appointment of a collector. If this is true, the writ cannot issue; but we are unable to follow this feature of the argument. The order is that when the county judge next appoints a collector to collect the county revenue, to embrace in the order of appointment a direction to the officer to collect both the levy heretofore made to pay this judgment and the levy made or to be made for county purposes, and to exact of him but one bond to cover the collection of all the taxes. The duty is continuing and also independent of anything contained in the court's order, to appoint a collector (there being no sheriff) to collect the usual county levies; and, when that appointment is once made, the discretion of the county judge in that behalf will be exhausted. It results that the true effect of the order is to require the county judge to impose upon the collector so chosen, in addition to his duty to col-

lect the county revenue, the duty to collect and secure the tax already levied to pay this judgment. It was held in Commonwealth v. Wade's Adm'r, 126 Ky. 799, 104 S. W. 967:

"* * * When a collector is appointed to collect the county revenue, another may not be appointed to collect some special assessment."

We think the only effect of the statutory amendment relied on to escape that decision is to relieve the collector and his bondsmen from liability for uncollected taxes not covered by the order of appointment. The decision removes all vestige of interference with the county judge's legal discretion, and reduces the matter to an exaction of a simple ministerial duty.

[7] It is objected also that proper demand has not been made. It is averred in the petition and is not denied that on March 7, 1907, Apperson notified the original defendants in writing of his purchase of the judgment and requested them to levy a tax for its payment within 30 days. It is true that the terms of office of those defendants expired, and some of their successors deny that demand was made of them, or that they had refused to act; but plaintiffs below were not bound to make a new demand upon each of the successors in office, for their substitution subjected them to the effect of the original demand. Prout v. Starr, 188 U. S. 544, 23 Sup. Ct. 398, 47 L. Ed. 584. Besides, a legal duty rested for years upon the county and the officers to levy and cause to be collected a tax sufficient to pay the judgment; and this duty, reinforced as it was by the demand mentioned, called for effective action on the part of the county and its officials successively. United States v. Saunders, 124 Fed. 124, 127, 59 C. C. A. 394 (C. C. A. 8th Cir.); United States v. Auditors of Town of Brooklyn (C. C.) 8 Fed. 473, 475; City of Cairo v. Campbell, 116 Ill. 305, 309, 5 N. E. 114, 8 N. E. 688; Commonwealth ex rel. v. Commissioners of Allegheny County, 37 Pa. 237, 246.

There are certain features of the last order made by the court which require brief attention. They immediately succeed the portion of the order set out in this opinion. They direct the county judge in his order appointing a collector to require him to report to the court below on the first of each month the amount of money collected under the levy and to pay same to the clerk of the court below. We are disposed to believe that these provisions should be eliminated. If the collector were directed to act under the special statute for the benefit of this creditor and under direction of the United States court, this kind of supervision might be appropriate. But the main portion of the order is made on the theory that the creditor is proceeding according to the general rights of all creditors under general statutes; and, respecting such reports and payments, the discretion of the county judge should not be disturbed. The order will be modified accordingly.

Subject to such modification, the judgment below is affirmed, with costs.