## GREEN COUNTY, KENTUCKY, v. QUINLAN.

### CERTIORARI TO THE UNITED STATES CIRCUIT COURT OF APPEALS FOR THE SIXTH CIRCUIT.

No. 351.   Argued December 17, 18, 1908.—Decided January 4, 1909.

Findings of fact made by the Circuit Court which were not objected to and which accompanied the questions certified by the Circuit Court of Appeals, *held* in this case to be sufficient to justify entering judgment thereon after this court had responded to the questions certified.

The issuing of bonds in payment of a subscription to railroad stock by an officer, charged with the duty of ascertaining whether conditions precedent had been fulfilled, raises a presumption of their fulfillment and of the proper issuing of the bonds upon which a lawful holder of the bonds is entitled to rely until it is·overcome by evidence to the contrary. In this case nothing in the findings overcomes such presumption.

In construing written instruments the entire instrument will be considered and not single words or phrases, and the intent reached even if technical meanings be disregarded; and so "on condition" interpreted as meaning a covenant or agreement.

Although county bonds may have been authorized "upon condition" that the railroad company assisted expend the proceeds as specified, if the condition is in fact merely a covenant or agreement, as in this case, the subsequent failure of the corporation to perform cannot be pleaded by the county against a *bona fide* holder for value.

In the absence of clearest proof coupon bonds intended for the market will not be presumed to have been issued under such conditions as would destroy their salability.

157 Fed. Rep. 33, affirmed.

THE facts are stated in the opinion.

*Mr. Ernest Macpherson*, with whom *Mr. John W. Lewis* was on the brief, for petitioner.

*Mr. Edmund F. Trabue* and *Mr. George Du Relle*, with whom *Mr. John J. McHenry, Mr. John C. Doolan* and *Mr. Attilla Cox, Junior*, were on the brief, for respondent.

Mr. Justice Moody delivered the opinion of the court.

The record and proceedings in this cause are in this court by virtue of a writ of certiorari issued to the Circuit Court of Appeals for the Sixth Circuit. The action was brought in the Circuit Court of the United States by Quinlan against Green County on certain bonds and coupons attached thereto, purporting to have been issued by Green County. The jurisdiction was based upon diversity of citizenship.

The petition alleged that the plaintiff was "the holder and owner" of the bonds named; that the bonds and coupons were duly executed and issued, were due and unpaid, and prayed judgment for their face value with interest.

The defendant filed a plea in abatement to the jurisdiction, alleging, in substance, that the plaintiff was not the real holder and owner of the bonds, and that the jurisdiction of the court was invoked fraudulently. Certain allegations contained in this plea were, on motion, stricken therefrom, and no exception was taken to the order. A reply to the plea was filed, denying its allegations. Thereupon it was agreed that the issues of law and fact should be tried by the court without a jury, and that the plea should be deemed a part of the answer, which was that day filed. In addition to the facts alleged in the plea the answer set up in defense (1) a denial of all the allegations of the petition; (2) that there was no consideration for the bonds; (3) that they were obtained by fraud; (4) that recovery upon some of the coupons was barred by the statute of limitations; (5) that the bonds were issued in payment of a subscription to the stock of the Cumberland & Ohio Railroad upon two conditions, namely, that the railroad should be constructed in a certain designated manner and that the county first should be exonerated from a prior subscription to the bonds of another railroad company, neither of which conditions had been performed. The plaintiff filed a reply, denying the allegations of the answer. There were further pleadings, which are unimportant here. After trial, the court rendered the following judgment:

"This action, by a stipulation in writing, having been here-tofore submitted to the judgment of the court without the intervention of a jury, and the court having heard the evidence and the arguments of counsel, and being now sufficiently advised, makes part of this judgment the following: 'Finding of Fact.'

"1. The court finds that the plaintiff is a citizen of the State of New York, and was so when this action was instituted on March 28, 1899, and that the plaintiff was then the *bona fide* holder for value of the bonds and coupons sued on, and fully entitled to sue the defendant thereon in this court.

"2. That the Cumberland & Ohio Railroad Company was a corporation organized and existing under the laws of the State of Kentucky, with power to receive a subscription to its capital stock from the defendant, Green County, and said county was authorized conformably to law to make a subscription to said capital stock and to pay for the same in bonds of said county.

"3. That June 17, 1869, there was, as appears from the records thereof, presented to the Green County Court by commissioners of said railroad company the following request:

"'We, the undersigned, commissioners of the Cumberland & Ohio Railroad Company, hereby request that the County Court of Green County submit to a vote of the qualified voters of said county the question, "Whether said Court shall subscribe for and on behalf of said county, and in pursuance of the provisions of the charter of said railroad company, two hundred and fifty thousand dollars to the capital stock of said company, payable in the bonds of said county, having twenty years to run and bearing six per cent interest from date, upon the condition that said company shall locate and construct said railroad through Green County and within one mile of the town of Greensburg in said county, and shall expend the amount so subscribed within the limits of Green County; and also upon the further conditions that said bonds shall not be issued or said county pay any part of either principal or in-

terest on said amount subscribed as aforesaid until said county of Green shall be fully and completely exonerated from the payment of the capital stock subscribed for by the County Court of said county for and on behalf of said county to the Elizabethtown & Tennessee Railroad Company.'"

"4. That on the same day, namely, on June 17th, 1869, the County Judge of Green County, acting alone and as the County Court, entered an order in said Court in the following language:

"'Present: Thos. R. Barnett, Judge.

"'Whereas the Commissioners of the Cumberland & Ohio Railroad Company by virtue of the authority delegated to them by the charter of said company, have requested the County Court of Green County to order an election in the said county of Green, and to submit to the qualified voters of said county the question whether said county court shall subscribe for and on behalf of said county, two hundred and fifty thousand dollars to the capital stock of the Cumberland & Ohio Railroad Company and payable in the bonds, of said county, having twenty years to run and bearing six per cent interest from date, and upon condition that said company shall locate and construct said railroad through the said county of Green, and within one mile of the town of Greensburg, in said county, and shall expend the amount so subscribed within the limits of Green County; and also upon the further condition that said bonds shall not be issued or said county pay any part of the principal or interest on said amount subscribed to said Cumberland & Ohio Railroad Company, until said county of Green is fully and completely exonerated from the payment of the capital stock voted by said county, and authorized to be subscribed by said Green County Court to the Elizabethtown & Tennessee Railroad or any part of the interest thereon. It is therefore, ordered by the court that an election by the qualified voters of Green County, at the voting places in said county, be held and conducted by the several officers as prescribed by law for holding elections, on the third

day of July, 1869, to vote on the question as to whether or
not the said County Court shall, for and on behalf of said
county subscribe two hundred and fifty thousand dollars to
the capital stock of the said Cumberland & Ohio Railroad con-
ditioned and to be paid, as above stated.'

"5. That at the election held pursuant to said order there
were cast in favor of said proposition and subscription a ma-
jority of the votes of the qualified voters of said county, and
this fact, upon being duly ascertained, was certified by the
proper officers as required by law.

"6. That on the third day of June, 1870, the County Judge
of said county, acting alone and as the county court of said
county, entered an order in said court as follows:

" 'Present: Thomas R. Barnett, Judge.

" 'Whereas, in pursuance of an order of this Court made on
the 17th day of June, 1869, an election was held in the said
County of Green, on the third day of July, 1869, at the sev-
eral precincts of said county, and it appearing that a majority
of the qualified voters at said election decided that the county
of Green should subscribe for two hundred and fifty thousand
dollars of the capital stock of the Cumberland & Ohio Railroad
Company; now it further appearing that said election was
held in conformity with the law, and in accordance with the
provisions of the charter of said company, now, therefore, I,
Thomas R. Barnett, the presiding judge of the Green County
Court, by virtue of the authority in me vested by law, and to
carry out the wishes of said voters, do hereby subscribe for
two hundred and fifty thousand dollars of the capital stock of
said Cumberland & Ohio Railroad Company, for and on be-
half of said county of Green, which subscription is to be paid
in the bonds of said county as prescribed in said order of sub-
mission, and this subscription is made with the conditions set
out in the order of this Court, ordering said election and now
of record in the office of this county.'

"7. That on the 12th day of October, 1871, the said county
Judge of said county, acting alone and as the county court of

said county, entered an order in said court in the following language:

" 'Present: Thomas R. Barnett, Judge.

" 'On motion of E. H. Hobson, director of the Cumberland & Ohio Railroad, it is ordered that Z. F. Smith, president of the Cumberland & Ohio Railroad, be, and he is hereby authorized to have printed for the county of Green the bonds to the amount of two hundred and fifty thousand dollars, the amount of the subscription of Green County to the said railroad, in the following denominations, to wit, the same to be conditioned as specified in the order submitting the vote to the said county:

| | | |
|---|---|---|
| 125 bonds at $1,000 | $125,000 | 00 |
| 200 bonds at    500 | 100,000 | 00 |
| 250 bonds at    100 | 25,000 | 00 |
| | $250,000 | 00' |

"8. That pursuant to all that was done, as aforesaid, the defendant, Green County, issued and delivered to the said Cumberland & Ohio Railroad Company $250,000 of its bonds of the description aforesaid except that the said conditions were not stated therein, in payment of said subscriptions to said capital stock, and thereupon there was delivered to said county in payment thereof, and said county received, and has ever since held and owned, the certificates of the said railroad company for the 2,500 shares of $100 each of its capital stock so paid for by said bonds.

"9. That the $47,509 of bonds and coupons sued on in this action were part of the bonds thus issued and delivered to said railroad company in payment for said stock.

"10. That while the proposed line of said railroad was located through said county from its northern line to its southern line, and within one mile of Greensburg, yet that only about five miles of said railroad has ever been constructed or attempted to be constructed in said county, the part thus constructed extending from the northermost line of said county

to the town of Greensburg, the county seat; which town is located about fifteen miles from the southernmost line of the county and about as distant from any other line of the county except the northern line.

"11. That only $150,000 of the bonds thus issued, or the proceeds thereof, were expended within the limits of Green county. No other part of said bonds was expended in said county.

"12. That with said $150,000 of said bonds the grading, bridging and tunnelling on the track of said railroad was done and paid for over the five miles aforesaid, but no further, and when this was done, the work on the railroad was suspended for some years. Afterwards the rails and ties and superstructure generally were put upon the track theretofore graded and the railway was completed from the northernmost line of the county to Greensburg, under the terms of its lease, by the Louisville & Nashville Railroad Company at its own expense, and not with any of the bonds issued as aforesaid by the defendant.

"13. That on the 15th day of August, 1872, at a called term of the Green County Court, over which Thomas R. Barnett, County Judge, presided, and no justice of the peace being present, the following order was entered by said Court:

" 'Present: Thos. R Barnett, Judge.

" 'Application was this day·made to the presiding judge of the County Court of Green county, by the President and Board of Directors of the Cumberland & Ohio Railroad Company to issue the balance of the bonds of said county to the amount of the subscriptions of said county of Green to said Cumberland & Ohio Railroad Company, and the court being sufficiently advised, it is ordered by the court that the balance of said bonds be and they are hereby ordered to be issued, the same to be signed by the judge of said county court of Green county, and countersigned by the clerk of said court, as required by the charter of said company.'

"14. That except as to the number of the bond and the

. amount agreed to be paid therein the bonds sued on were each of the following, namely:

"  'United States of America,

"  '*County of Green, State of Kentucky,*          $500.00

"  'For the Cumberland & Ohio Railroad.

"  'Twenty years after date, the county of Green, in the State of Kentucky, will pay to the holder of this bond the sum of five hundred dollars with interest thereon at the rate of six per cent per annum, payable semiannually upon presentation of the proper coupons hereto attached, the principal and interest being payable at the Bank of America, in the city of New York.

"  'In testimony whereof, the judge of said county of Green has hereunto set his hands and affixed the seal of said county, on the first day of April, A. D. 1871, and caused the same to be attested by the county clerk, who has also signed the coupons hereto attached.

"  '[Green County Seal.]          T. R. BARNETT, *Judge.*

"  'D. T. TOWLES, *Clerk.*'

"As appears on the face of each of said bonds there was no recital therein of any of the facts herein found to be true.

"15. That the plaintiff knew when he purchased the bonds sued on that the railroad had not been constructed in Green county otherwise than as herein found to be the fact, namely, from the northern line of said county to the town of Greensburg, but no further.

"16. That in the year 1868, upon a proposition therefor being submitted to the vote of the qualified voters of Green County, the majority of said qualified voters voted in favor of a proposition to subscribe for $300,000 of the capital stock of the Elizabethtown & Tennessee Railroad Company, and upon the said result of the election being properly ascertained and certified the county judge of Green county, sitting alone and as the county court of said county, made and entered of record in said court the following orders:

" '1868. Green County Court, May Called Term, 1868, 20th Day of May.

" 'Present: T. R. Barnett, Judge.

" 'This day T. R. Barnett, Presiding Judge, and D. T. Towles, Clerk of the Green county court, *this day* produced their certificate in words and figures as follows, viz: We, T. R. Barnett, Presiding Judge, and D. T. Towles, Clerk of the Green county court, duly authorized to compare the Poll Book of Green county, certify that an election held in said county at the various voting places in said county, on the 16th day of May, 1868, on the question whether the county court of Green county shall, for and on behalf of said county, subscribed for three thousand shares in capital stock of Elizabethtown & Tennessee Railroad Co., to be paid for in the bonds of said county, payable in twenty years and bearing six per cent interest payable semi-annually in the city of New York, with interest coupons attached thereto, and that 586 votes were cast for said subscription and 204 against said subscription.

" 'May 20th, 1868.

" 'T. R. Barnett.
" 'D. T. Towles.

" ' It is therefore ordered by the court that the said vote be, and is now, entered of record, as follows, to wit: 585 votes cast for said subscription, and 204 votes were cast against said subscription, showing that there is a majority for said subscription of three hundred and eighty-two votes.

" ' It is now, therefore, ordered that the clerk of this court, for and on behalf of the county of Green, make said subscription on the terms specified in the order submitting the question to a vote as aforesaid.'

" 17. That no formal or express exoneration of said county from the payment of said last named subscription was ever made or attempted, but nothing further has, up to this date, ever been done in respect to it, and neither bonds by the county nor stock by the said last named railroad company have ever

been issued or delivered in execution of said orders or under the terms of said subscription.

"Upon consideration of the facts hereinbefore found to be true, and of the opinion of the Court of Appeals, in the case of J. D. Shortell *v.* Green County, the court, in deference to said opinion, has reached the following

## "*Conclusions of Law.*

"1. That the plaintiff is not entitled to recover because the conditions upon which the subscription for the capital stock of the Cumberland & Ohio Railroad Company was made and upon which the bonds sued on were issued have not been performed or complied with, and

"2. That the failure to recite in the bonds any of the facts herein found to be true, or any of the conditions upon which the bonds were issued, is immaterial as against the **defense** that there was a failure to perform the said conditions.

## "*Judgment.*

"In consideration of the premises it is considered and adjudged by the court that the plaintiff's petition be and it is dismissed and that the defendant recover of the plaintiff its costs herein expended, and it may have execution therefor."

The defendant filed no exception or objection to the findings of fact, but the plaintiff excepted to the judgment and sued out a writ of error to the Circuit Court of Appeals, which, after the response by this court to a question certified to it (205 U. S. 410), reversed the judgment of the Circuit Court, with direction to enter a judgment for the plaintiff. The question to be determined is, whether on the findings of fact the Court of Appeals erred in ordering judgment for the plaintiff.

We think, although the defendant contends to the contrary, that the findings of fact, which accompanied the judgment of the Circuit Court, afford ample foundation for a final judgment. They were not objected to by the defendant at the time, and it was content to submit the case for judgment upon

them. Nor has anything been advanced in argument which leads us to doubt their accuracy, or to desire that they should be more complete.

The defendant's counsel has not confined his argument to the questions presented by the record. It seems expedient, therefore, simply to determine the questions deemed to arise on the record, and stop there.

When the case was here before it was decided that the county had the power to issue the bonds, upon the approval of the qualified voters, and that (following the ruling of the highest court of Kentucky in this respect) the voters might impose conditions upon the issue. The approval was given, and the conditions imposed were expressed in the vote, as follows:

" . . . upon condition that said company shall locate and construct said railroad through the said county of Green, and within one mile of the town of Greensburg, in said county, and shall expend the amount so subscribed within the limits of Green County; and also upon the further condition that said bonds shall not be issued or said county pay any part of the principal or interest on said amount subscribed to said Cumberland & Ohio Railroad Company until said county of Green is fully and completely exonerated from the payment of the capital stock voted by said county and authorized to be subscribed by said Green County Court to the Elizabethtown & Tennessee Railroad."

Bonds to the amount of $250,000 were issued, and delivered pursuant to the vote, to the Cumberland & Ohio Railroad Company, and some of them have come to be legally owned by the plaintiff. There was consideration for them in 2,500 shares of the stock of the company, which were delivered to the county and have been held by it up to the present time. There is not the slightest evidence of fraud in their issue.

The real defense is that the bonds were void because the conditions expressed in the vote, which are said to be indispensable prerequisites to their validity, have not been fulfilled.

The conditions relied on in defense are two, and they are subject to different considerations.

The condition that the bonds should not be issued until the county had been "exonerated" from a subscription theretofore authorized to be made to the stock of the Elizabethtown & Tennessee Railroad is a condition precedent to the lawful issue of the bonds. As these bonds contained no recital importing that the conditions had been performed, it was open to the county to show, even against a purchaser for value before maturity without notice, that the conditions had not been performed. But the issue of bonds in payment of a subscription to railroad stock by an officer charged with the duty of ascertaining whether the conditions indispensable to the lawful issue had been fulfilled, raises a presumption of their fulfillment prior to the issue. A lawful holder of the bonds is entitled to rely upon this presumption, although he incurs the danger that the presumption will be overcome by evidence. If he wishes absolute security in this respect, he must insist upon a recital. This much was determined by the decision of this court when the case was here before. *Quinlan* v. *Green County*, 205 U. S. 410. That case did not decide that there was a presumption of performance arising out of the length of time, during which no claim was made in respect of the Elizabethtown & Tennessee Railroad subscription, but that there was a presumption of performance before the issue of the bonds. When we come to look at the facts found by the Circuit Court there is nothing to rebut this presumption. On the contrary, everything tends to support it. Even the wide range of the argument for the defendant did not suggest a single fact which could, to the slightest extent, control the presumption. The conclusion follows that the exoneration from the prior subscription had happened before the issue of the bonds to the Cumberland & Ohio Railroad Company. That condition has been performed, and is not available as a defense.

We must next consider the effect of the provision in the vote, that the subscription to the stock payable in bonds shall

be "upon condition that said company shall locate and construct said railroad through the said county of Green, and within one mile of the town of Greensburg, in said county, and shall expend the amount so subscribed within the limits of Green County." If this part of the vote imposes a condition upon the lawful issue of the bonds or upon the obligation of the county to pay them, the defense must prevail, for the condition has not been performed. Only $150,000 have been expended within the limits of the county, and the railroad, though constructed to Greensburg, a distance of five miles, was not carried further, although it was located from north to south through the county, a distance of twenty miles. It is not conclusive that the obligation thus imposed upon the railroad company is called a condition. It frequently has been the case that the word condition has been used in written instruments in a looser and broader sense than the law attaches to it. In ascertaining the true meaning of instruments in writing courts do not confine their attention to single words, phrases, or sentences. The meaning is sought from the whole instrument, viewed in the light of the subject with which it deals. This general rule of interpretation often makes it manifest that that which is called a condition is really but a covenant or agreement, to be performed independently of the counter obligation with which it is associated. When such an intent is discovered the courts have no difficulty in giving it effect, though the result be to disregard the technical meaning of the word condition. *Stanley* v. *Colt*, 5 Wall. 119; *Sohier* v. *Trinity Church*, 109 Massachusetts, 1; *Episcopal City Mission* v. *Appleton*, 117 Massachusetts, 326; *Cassidy* v. *Mason*, 171 Massachusetts, 507; *Clapp* v. *Wilder*, 176 Massachusetts, 332; *Post* v. *Weil*, 115 N. Y. 361; *Clark* v. *Martin*, 49 Pa. St. 289; *Watrous* v. *Allen*, 57 Michigan, 362; *Scoville* v. *McMahon*, 62 Connecticut, 378; *Hartung* v. *Witte*, 59 Wisconsin, 285.

A consideration of the vote of the county leaves no doubt that that part of it which prescribed the nature of the railroad construction was not a condition. It would have been easy

to have postponed the obligation to pay the bonds until the construction had been completed, as desired by the county. Such a provision as that in *Provident Life and Trust Company v. Mercer County,* 170 U. S. 594, would have been enough. Indeed, the draftsman need not have looked afield. Nothing need have been done except to use the same language with reference to construction which he used in this vote with reference to exoneration from the prior subscription to the stock of another railroad. There he said that the subscription should be "upon 'the further condition that said bonds shall not be issued or said county pay any part of the principal or interest" until the exoneration had happened. The studied omission of this apt, clear and emphatic language from the part of the vote dealing with the construction of the Cumberland & Ohio Railroad is of controlling significance. If the question rested upon this comparison of language alone, it would be quite enough to warrant the inference that it was not intended that the condition which was imposed in the one case should be equally imposed in the other. This conclusion is confirmed by a consideration of the subject-matter with which the vote dealt. It would have defeated the very purpose for which the bonds were issued if the obligation to pay them had been made conditional upon the completion of the construction desired. The railroad, to whose stock the county was authorized to subscribe, was not constructed, and needed the proceeds of the bonds to complete the work of construction. By accepting bonds upon the terms proposed it came under the obligation to expend the amount subscribed within the limits of the county. As the subscription to the stock was to be paid for by the bonds, the amount subscribed was the amount of the bonds. The bonds which the county was authorized by the legislature to issue were described in the law as "payable to bearer, with coupons attached, bearing any rate of interest not exceeding six per cent per annum, payable semi-annually in the city of New York, payable at such times as they may designate not exceeding thirty years from date" The bonds thus

described were evidently designed for the market. They could pass from hand to hand, since they were payable to bearer. The interest was represented by detachable coupons, and was payable at the chief money center of the country. It is manifest that the bonds were intended to be issued and delivered to the railroad company before the construction began. It would require the very strongest words in the vote to convince us that it was intended to attach to such bonds a condition which would destroy their obligation, if, after a term of years, it should appear that the construction had not been completed in the manner designated. Bonds with such a condition would be unsalable, and it is inconceivable that they could be issued with any expectation that they could be used. We cannot doubt that the county, in its anxiety to secure the building of the railroad, was content to rest upon the agreement of the company to construct it in the manner desired, and that the only technical condition to the validity of the bonds was that which referred to the exoneration from a prior subscription. As it turned out, it would have been very much wiser for the county to have declined to issue the bonds until the construction was completed, or to have taken some security for the performance of the agreement with reference to the construction. But courts cannot make for the parties better agreements than they themselves have been satisfied to make. The records of this court show that prudence has not been a marked characteristic in the issue of municipal bonds in aid of the construction of railroads.

Our conclusion upon the whole case is that, with the exception of the condition which has been performed, the bonds were issued upon a good consideration and unconditionally, and were a valid obligation of the county in whosesoever hands they subsequently lawfully came.

We have examined with attention and respect the case of *Green County* v. *Shortell*, 116 Kentucky, 108, wherein the Court of Appeals of the State arrived at a different conclusion, and regret that we are unable to concur in its reasoning.

The finding of the Circuit Court was that the plaintiff at the time of beginning his action, which was after the bonds were overdue, was the *bona fide* holder for value of the bonds and coupons sued on. In view of the conclusion at which we have arrived it seems unnecessary to dwell upon the exact terms of this finding. In any event, the plaintiff was the legal holder and owner of the bonds. This is not disputed. Assuming that any defense is open of which the holder might have had notice by inspecting the law, vote and the records of the County Court, it would come to nothing, because such an inspection would have shown that no defense to the payment of the bonds existed.

We need not consider what would have been the situation if the bonds were still in the hands of the railroad and it were bringing action upon them, and an attempt had been made to set up against their amount the damages resulting from the railroad's failure to perform the agreement with respect to construction. The bonds here are not in the hands of the railroad nor is any such defense set up. The defense is, that the bonds are null and void, and, as has been shown, that defense is without merit.

It appears that a recovery upon some of the coupons declared upon is barred by the statute of limitations. This is conceded by the plaintiff, who says that the judgment of the Circuit Court of Appeals, in view of the state of the pleadings, does not require that there should be a recovery upon the coupons thus barred. It is better, however, that this question be freed from doubt and the judgment be modified so as to require the Circuit Court to ascertain what coupons are barred by the statute of limitations and to enter judgment for the remainder, and for the principal of the bonds, of course, with interest in both cases. Thus modified, the judgment of the Circuit Court of Appeals is

*Affirmed.*

MR. JUSTICE HARLAN, dissenting.

I quite agree with Judge Lurton of the Circuit Court of Ap-

peals, that common justice requires that there should not be now any judgment upon the merits in these cases. He correctly said that the findings of fact do not adequately cover all the issues, and upon those to which they are responsive they are neither definite nor full enough to justify a judgment in favor of the plaintiff. Without expressing at this time any views upon the merits of these cases, I am of opinion that the judgment in each case should be reversed and the cases remanded with an order for a new trial, when all the facts may be more fully disclosed and sufficient findings made.