GRAHAM, County Judge, v. QUINLAN.

SAME v. MURPHY et al.

(Circuit Court of Appeals, Sixth Circuit. June 30, 1913.)

Nos. 2,488, 2,489.

1. MANDAMUS (§ 3*)—EXISTENCE OF OTHER REMEDY—ENFORCEMENT OF RAILROAD AID BONDS.

 Where railroad aid bonds were issued by a county April 1, 1871, nine years before the remedy to enforce payment prescribed by Acts Ky. 1869, c. 1578, was made exclusive, a holder of such bonds was not limited to such remedy, but might enforce payment by mandamus against the county's taxing officers.

 [Ed. Note.—For other cases, see Mandamus, Cent. Dig. §§ 8, 10, 11, 16–34; Dec. Dig. § 3.*]

**2. Counties (§ 188\*)—Railroad Aid Bonds—Enforcement—Remedy.**

Where railroad aid bonds were issued prior to the adoption of Acts Ky. 1869, c. 1578, making the remedy prescribed thereby for the enforcement of such bonds exclusive, and the bonds so issued contained no reference to the act, or to the remedy given under it, the county could not successfully claim that the bonds were parted with, or that they had been purchased, on the faith of any contractual remedy.

[Ed. Note.—For other cases, see Counties, Cent. Dig. §§ 296–299; Dec. Dig. § 188.\*]

**3. Counties (§ 190\*)—County Bonds—Payment—Tax Levy—Statutes— State Statutes—Construction.**

Though Acts Ky. 1869, c. 1578, § 15, vests power to levy taxes to pay railroad aid bonds in the "county court," and later vests the same power in the presiding judge alone, "if preferred," both powers survive, if either survive; there being nothing in the act to indicate that the exercise of the power of the county judge to issue the bonds was intended to supplant that of the county court to levy taxes to pay them.

[Ed. Note.—For other cases, see Counties, Cent. Dig. §§ 303, 304; Dec. Dig. § 190.\*]

**4. Evidence (§ 83\*)—Presumptions—Official Acts.**

Where the county judge convened the fiscal court and presided over it at the time levies were made to pay railroad aid bonds, he was entitled to vote on the question; and, mandamus having been granted to compel the making of the levies, it would be presumed that he concurred therein, though the record did not specifically show that he voted.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 105; Dec. Dig. § 83.\*]

**5. Counties (§ 192\*)—Levy of Taxes.**

Where a county judge and certain magistrates composed a county court, with jurisdiction to levy taxes, and the court made a levy to pay railroad aid bonds of the county, the levy was valid, though the county judge withheld his assent therefrom.

[Ed. Note.—For other cases, see Counties, Cent. Dig. §§ 300–302; Dec. Dig. § 192.\*]

**6. Mandamus (§ 176\*)—Scope of Relief—Tax Levies—Railroad Aid Bonds —Payment—Installments.**

Where a tax levy required to pay judgments on railroad aid bonds issued by a county would amount to about 16 per cent. of the value of the taxable property therein, orders in mandamus to require payment of the bonds should provide for installment levies, not exceeding one-tenth of the amount required to pay the judgments in any one year.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. §§ 392–394; Dec. Dig. § 176.\*]

In Error to the District Court of the United States for the Western District of Kentucky; Walter Evans, Judge.

Mandamus by Mary Amis Quinlan, executrix, etc., and by Sherley D. Murphy and others, against Elliott Graham, County Judge of Green County, Ky. . Decree for complainants, and defendant brings error. Modified and affirmed.

Ernest Macpherson, of Louisville, Ky., for plaintiff in error.

George Du Relle, J. B. Baskin, Alex P. Humphrey, James S. Pirtle, and Edmund F. Trabue, all of Louisville, Ky., for defendants in error.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

---

\*For other cases see same topic & § number in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

WARRINGTON, Circuit Judge. These were mandamus suits brought in the court below to enforce payment of two of its judgments. Peremptory writs were granted, and the defendants prosecute error.

The cases present similar facts, were heard together here, and will be disposed of in this opinion. The judgment in the Quinlan Case was for $89,195.63, with interest, and $289.12 accrued costs, and that in the Murphy Case was for $108,718.20, with interest, and $789 accrued costs. These judgments were based upon bonds and past-due coupons of Green county, Ky., issued under an act of 1869 entitled "An act to incorporate the Cumberland & Ohio Railroad Company." 1 Acts 1869, p. 463. The bonds were held valid, and the judgments below were respectively affirmed, in Green County v. Quinlan, 211 U. S. 582; 29 Sup. Ct. 162, 53 L. Ed. 335, and Green County v. Thomas, Ex'r, 211 U. S. 598, 29 Sup. Ct. 168, 53 L. Ed. 343. See, also, Quinlan v. Green County, 205 U. S. 410, 27 Sup. Ct. 505, 51 L. Ed. 860, where one of two questions certified by this court to the Supreme Court concerning the bonds was answered. The Quinlan Case, as decided by this court, is reported in 157 Fed. 33, 84 C. C. A. 537, 19 L. R. A. (N. S.) 849, and the Thomas Case, as decided here, appears in 159 Fed. 339, 89 C. C. A. 405. The judgment recovered in the latter case is the one involved in the present Murphy Case. Nothing could be added to accentuate the obligation of the county to pay these judgments.

It could serve no useful purpose to recite even the substance of the various proceedings which resulted in the levies of the taxes and the orders made for their collection under the writs issued by the court below. Those proceedings were, we think, well within the liberal provisions made for amendments by both the Kentucky and federal statutes. Carroll's Ky. Codes (5th Ed.) §§ 134, 135; section 954, Rev. St. (U. S. Comp. St. 1901, p. 696); Mitchell v. Toledo, St. L. & W. R. Co., 197 Fed. 528, 534, 117 C. C. A. 24 (C. C. A. 6th Cir.). It needs only to be said that on June 13, 1910, a writ of mandamus was ordered to be issued in each case against the defendants therein named, who composed the fiscal court of the county, requiring them to assemble as such court within a specified time and to levy a tax upon all the taxable property of the county at a rate sufficient to pay each judgment, interest, and costs, and the costs of collecting the taxes, and to certify the levy of the tax for collection "to such officer as is or may be authorized by law and the orders of said fiscal court to collect the taxes imposed by law for regular county purposes upon the property subject to taxation in said Green county." The fiscal court assembled and levied the necessary taxes; and, there being no sheriff, the court certified the levy to certain collectors, successively, who for one reason or another failed to collect. November 6, 1912, a further writ was ordered to be issued in each case against Elliott Graham, county judge of Green county, one of the defendants below, commanding him:

"Whenever a sheriff or collector of county taxes, or other officer authorized by law to collect the taxes imposed for regular county purposes upon the property subject to taxation in said Green county, shall be elected or appointed, and shall qualify as such officer, to embrace in the order of appoint-

ment or qualification a direction to the officer elected or appointed and qualified to collect both the tax heretofore levied to pay plaintiff's said judgment and the tax levied or to be levied for regular county purposes, and to require of such sheriff, collector, or other officer the execution of one bond to secure the collection of each and all of said taxes."

This enlargement of the order for collection over that of the first order, before quoted, seems from the record to have become necessary to the execution of the original purpose to require both the ordinary county levy and these judgment levies to be collected by the same officer under a single order of appointment and bond.

The cases thus presented are ruled by the decision of this court in Tucker v. Hubbert, 196 Fed. 849, 117 C. C. A. 365. We shall as far as necessary state the reasons for this conclusion, with the objections urged against the application of the decision:

(1) The judgment as affirmed in that case was based on bonds issued under a special act, entitled "An act for the benefit of Taylor county, empowering it to compromise its debts, issue bonds, and levy and collect taxes to pay the same" (1 Acts 1877–78, p. 554); but those bonds were issued and in part used by way of compromise to take up bonds previously issued under the special act that is involved here— that is, "An act to incorporate the Cumberland & Ohio Railroad Company," section 12 of that act having authorized the construction of a railroad through several counties, including Taylor and Green (1 Acts 1869, pp. 463, 468).

(2) These acts of 1869 and 1878 differ as respects the levy and collection of taxes to pay the bonded indebtedness they respectively authorized. Under the former, the levy in terms is to be made by the county court (composed of the county judge and the county justices of the peace), or, "if preferred," by the county judge alone; while under the latter act such levy and collection were authorized through action of the circuit court. However, for reasons stated later, it is not perceived that the two remedies sanctioned in Tucker v. Hubbert (the one given by the act of 1878, and the other through the fiscal court) differ in principle from the two remedies open here.

[1, 2] (3) True, by Act Feb. 27, 1880 (1 Acts 1879–80, p. 248), the remedy given for the collection of the bonds and coupons authorized by the act of 1869, was in terms made "exclusive of all other remedies"; but it is averred in each of the petitions in the instant cases, and nowhere denied in the records, that the bonds merged in the present judgments were issued on the 1st day of April, 1871, some nine years before the remedy given by the act of 1869 was so made "exclusive." Attention was called in the argument, for a purpose to which we shall allude later, to the findings of fact reported in the Quinlan Case, 211 U. S. at pages 584–591, 29 Sup. Ct. 162, 53 L. Ed. 335. It there appears (211 U. S. 588, 29 Sup. Ct. 165, 53 L. Ed. 335) that the bonds were issued August 15, 1872; still, if this were accepted, the bonds were issued as much as seven years before such remedy was made "exclusive." If those findings are to be referred to at all, the more important fact to be observed is that the bonds contained no reference to the act or to the remedy given under it (211 U. S. 589, 29 Sup. Ct. 162, 53 L. Ed. 335); and consequently they cannot rightfully

be said to have been either parted with or purchased upon the faith of any contractual remedy whatever (Hubbert v. Campbellsville Lumber Co., 191 U. S. at pages 75, 76, 24 Sup. Ct. 28, 48 L. Ed. 101).

[3] (4) The purpose of counsel in so referring to the special findings in the Quinlan Case, as stated, was to show that the county judge alone issued the bonds, and so to insist in substance that the county had "preferred" to exercise the powers of the act in that way, rather than through the county court, which would have included both the judge and the justices of the peace. This was made the basis of a claim that the levies in question are invalid, because they were not made by the county judge, but by the fiscal court. One answer to this is found in what has already been said touching the absence of contractual remedy. Another is that the act of 1869 (section 15) first vests the power to levy the taxes in the "county court"; and, while it is true that it later vests such power, "if preferred," in the presiding judge alone, it is plain that both powers survive, if either survive. There is nothing in the act to indicate that the exercise of the one in issuing the bonds was intended to supplant the other in their payment.

[4] It follows that the objection urged against the validity of the levies upon the theory that the county judge did not concur in them, is not tenable. He convened the fiscal court and presided over it. He had "the same right to vote on questions coming before that body that may be exercised by the magistrates sitting as members thereof." Hollis v. Weissenger, County Judge, 143 Ky. 72, 135 S. W. 410. We think the records fairly show that he acquiesced in the levies, although they do not show that he voted for them; but, since the peremptory writs were each aimed against him as distinctly as they were against the justices of the peace, it cannot be presumed that the presiding judge disobeyed the writs or refused to concur in the levies.

[5] Besides, the fiscal court had jurisdiction to make these levies, and, even if the presiding judge in truth withheld his assent, the action admittedly taken by that court operated to impose a valid levy in each instance. For reasons stated in Tucker v. Hubbert, we think this conclusion is not opposed to that reached upon the issue actually presented for decision in Guthrie v. Sparks, 131 Fed. 443, 65 C. C. A. 427; but in so far as the reasoning in that case may not be in harmony with our present conclusion, in view of the later decision in Bonta v. Fiscal Court of Mercer County, 144 Ky. 241, 137 S. W. 1084, the Guthrie Case should not be followed.

(5) We are not convinced that the case of Commonwealth v. Wade's Adm'r, 126 Ky. 791, 104 S. W. 965, which held that only one collector could be appointed, etc., was intended to be modified by the decision in Commonwealth v. Moody, 150 Ky. 571, 150 S. W. 680. The amendment of section 4131 passed upon in the Moody Case does not purport to change the portion of that section which provides for the appointment of collectors. The change simply provides that:

"Such collector shall only be required to give bond for and collect such taxes or moneys as may be mentioned or provided for in the order of the county court appointing him."

This could hardly have been intended, although so remarked in the opinion in the Moody Case, to change the statute as it was construed in

the Wade Case; for the change was made March 15, 1906 (Acts 1906, pp. 153, 248), and the Wade Case was decided October 23, 1907. Moreover, the order made by the Taylor county court and involved in the Moody case was that Moody was appointed only to collect particular taxes, that is, such as were levied by the fiscal court on the 24th day of January, 1911; but this did not involve the question of what taxes, nor does the amendment of section 4131 prescribe what taxes, may be included in the order of the court appointing him.

(6) As regards Bonta v. Fiscal Court of Mercer County, supra, it is not important under what statute the old railroad tax there sanctioned was originally authorized. It is enough that the transaction, which was the occasion of that tax, was admittedly had in virtue of a statute passed prior to the new Constitution and prior to the establishment of the fiscal court.

[6] (7) However, we feel that the rule laid down in City of Cleveland, Tenn., v. United States, 166 Fed. 678, 683, 684, 93 C. C. A. 274 (C. C. A. 6th Cir.), should be applied here. The tax required to pay the present judgments is about 16 per cent. of the taxable value of the entire property of Green county. The orders entered in the cases November 6, 1912, should be so modified as to require the collection of the tax in each case in installments, to be fixed by the court below, until each of the entire sums due and to accrue is paid, but not so as to require more than one-tenth of the total taxes levied to pay the judgments to be collected in any one year; and the bond required of each collecting officer should cover the portions of the taxes maturing and collectible during his term.

Subject to such modifications, the judgments below are affirmed, with costs.