HENDRICKSON, County Judge, et al. v. APPERSON.

(Circuit Court of Appeals, Sixth Circuit.   December 15, 1916.)

Nos. 2947–2951.

1. COUNTIES ☞194—COLLECTION OF TAXES—CONSTRUCTION OF STATUTE.
    Ky. St. § 4131, as amended by Act March 15, 1906 (Acts 1906, c. 22, art. 8, § 3; Ky. St. 1915, § 4131[3]), by providing that a county collector of taxes "shall only be required to give bond for and collect such taxes or moneys as may be   *   *   *   provided for in the order of the county court appointing him," by implication imposes upon the county court the duty of certifying to the collector all county tax levies and providing for their collection.   It cannot fairly be construed to empower such court to appoint two or more collectors, and to provide for the collection by each of such levies only as the court shall see fit.
    [Ed. Note.—For other cases, see Counties, Cent. Dig. § 306; Dec. Dig. ☞194.]

2. HIGHWAYS ☞128—COUNTY OR STATE TAX—CONSTRUCTION OF STATUTE.
    By two acts of the Kentucky Legislature (Acts 1914, cc. 86, 87; Ky. St. 1915, §§ 4356w, 4356x) a system of state highways connecting county seats is established, and provision is made to raise by taxation money to be used in their construction or reconstruction.   The second act further provides that "any road constructed or reconstructed under the provisions of this act shall forever hereafter be a county road and the duty of keeping the same in repair devolves upon the fiscal court of the county." Held, that a tax levied by a county, to be used in connection with state funds in the construction or reconstruction of certain of such roads, is a county, and not a state, tax, and is collectible by the county collector.
    [Ed. Note.—For other cases, see Highways, Cent. Dig. § 385; Dec. Dig. ☞128.]

In Error to the District Court of the United States for the Western District of Kentucky; Walter Evans, Judge.

Separate mandamus proceedings by Lewis Apperson by Elizabeth Creager; by Hugh S. Gardner, by Mildred E. Hocker, and by the Sterling Land & Investment Company against W. T. Hendrickson,

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Judge of Taylor County Court, and J. D. Jones, W. H. Bennett, A. W. Miller, L. Morgan, Ruel Eads, and T. E. Wise, Justices of the Peace of Taylor County, Ky. From judgments granting the writs, defendants bring error. Affirmed.

The following is the opinion of Walter Evans, District Judge:

The plaintiff's demurrer to the defendants' answer raises questions which we have often considered and decided in the course of the many years of litigation growing out of the bonded indebtedness of Green and Taylor counties, respectively, incurred by each in aid of the construction of a certain railroad. The indebtedness of both counties is alike, it grew out of the same railroad situation and similar legislation, and the character of the resistance made by each county against the payment of the debts has been the same. We have, therefore, quite a settled jurisprudence in this connection, at least so far as this court is concerned. The validity of the indebtedness must be regarded as having been settled by the decision of the Supreme Court in Green County v. Quinlan, 211 U. S. 582, 29 Sup. Ct. 162, 53 L. Ed. 335.

The routine steps taken in resisting payment after the validity of the indebtedness had been settled by the decision of the Supreme Court have been practically uniform and as follows: First. A contest upon the validity of the bonds being hopeless, the first resistance appears when a writ of mandamus is applied for, requiring the fiscal court to make a levy of taxation to pay the debt. Second. Failing to prevent the writ of mandamus, and after the taxation has been levied and proceedings for its collection have begun by putting or trying to put tax books in the hands of the sheriff, that officer either refuses to qualify, or, having qualified, resigns. Third. A collector of state taxes is then appointed separately, which, under the law of Kentucky, is admissible. Fourth. A collector of county taxes is then appointed, who usually refuses to accept the office if he is required to collect taxation to pay the railroad debts at the same time and under the same bond taken from him for the collection of the other county taxation, or he resigns if that requirement is made after he has qualified.

This brings the creditor to a standstill. It was perceived, however, that the county could not collect taxes for paying its other liabilities, especially the taxes necessary to pay the salaries of its officers, unless a collector should be appointed, and so an attempt became customary to place all the assessments for county purposes in the hands of the collector, except that which levied taxes for the payment of the railroad bonds, and a creditor owning those bonds would find it impossible to obtain a result favorable to himself if he could not have the taxation for his benefit levied and collected simultaneously with the other taxation by the collector, and, as we thought one county debt was as sacred as another, we enforced the Kentucky statute. The county officers who wanted their salaries paid usually found that they could be elected more easily if they opposed the payment of the bonded indebtedness. Their appeal to the spirit which demanded a repudiation of the bonded indebtedness usually secured them popular favor, and it was very plain that, if the taxes for the salaries of the officers and taxes for the payment of the ordinary county expenses could all be collected, and those necessary to pay the railroad bonds could be left out, things would move quite satisfactorily to those who desired to repudiate the county's bonded indebtedness. We did not concur in this plan, and concluded that this state of case should not be tolerated, inasmuch as the bonded indebtedness has been found by the Supreme Court to be a valid one. So it became our habit, under section 4131 of the Kentucky Statutes, to require the county or fiscal court, whichever had control of the matter, to make an assessment covering all, and to require that the collector, under such circumstances, should collect all alike, or else collect none, and in order to accomplish this, our writs of mandamus would require that there should be exacted from any sheriff or collector who collected county taxation a bond which would include alike an obligation to collect the levy for the railroad bonded indebtedness and the taxation for ordinary county expenses, including salaries of officers. In this way, and in this way only, could the creditors who held the bonds of the county have anything but a mere nominal

remedy. Without such a requirement the collector would collect money to cover all the other county expenses, and its officers, who got their salaries, might laugh at such of its creditors as had taken its bonds. The proper local court was also required, when appointing a collector of county taxes, to make his appointment cover all alike.

Section 4131 of the Kentucky Statutes provided a remedy to meet this situation, and in several instances in the course of this litigation we have heretofore endeavored to enforce that remedy in the way indicated. The Court of Appeals in Commonwealth, etc., v. Wade's Adm'r, etc., 126 Ky. 791, 104 S. W. 965, had construed that section, and in our proceedings we have followed that construction. It afforded a good remedy for the creditors who held the county's bonds. But at the instance of the two counties named the Legislature of the state in 1906 (Sess. Acts 1906) amended section 4131 by adding thereto the following words: "But such collector shall only be required to give bond for and collect such taxes or moneys as may be mentioned or provided for in the order of the county court appointing him." In Commonwealth, etc., v. Moody, 150 Ky. 571, 150 S. W. 680, the Court of Appeals upheld the amendment. In this case we are asked to accept and to follow that construction. We have been asked heretofore to do so, and have declined, and must again decline upon grounds similar to those controlling us in previous cases, though if the amendment to section 4131 of the Kentucky Statutes is to be applied only to debts which arise in the future, we see no reason why it might not be enforceable as to them. But as to any indebtedness which existed prior to the amendment of 1906, as the indebtedness in this case did, we must disregard that amendment and will briefly state our reasons for this conclusion:

The meaning of the language of a state Constitution or a state statute, as ascertained by decisions of the court of last resort of that state, is always accepted by the federal courts as binding upon them. So are decisions of such courts as to the validity of state legislation under the provisions of the state Constitution. But the federal courts are not bound by the decisions of any of the state courts as to the validity of a state statute, if the validity of such statute is challenged upon the ground that it is violative of the Constitution of the United States. These propositions are so familiar as to require no citation of authorities. The federal Constitution forbids a state to enact any law which impairs the obligation of a contract. The remedy for enforcing the contract is essentially a part of the contract itself. If a remedy is provided when the contract is created, it may indeed be changed, but only on condition that one equally efficient and equally available is substituted. In this instance the amendment to section 4131 of the Kentucky Statutes took away the only efficient remedy left the holder of any of the bonds of Taylor county, and, instead of providing another equally efficient, left those creditors helpless, or at least dependent upon the caprice of the county court. It is so plain that this cannot be constitutionally done that we have felt constrained to hold that the creditors who held the railroad bonds of the county were entitled to the remedy as it existed previous to the passage of the amendment of 1906, and especially as section 4131 which gave that remedy had been upheld in Commonwealth, etc., v. Wade's Adm'r, 126 Ky. 791, 104 S. W. 965, above referred to, which was decided in 1907, but in an action which arose before 1906. Of course, school taxes (which the Kentucky Court of Appeals has held to be state taxes) will not be affected by this ruling, but will be excepted from it, as will be shown in the judgment herein.

It is insisted that the road taxation provided for in the act approved March 24, 1914 (Acts 1914, p. 441), is a state tax, and stands upon the same footing as the school tax. So far as the taxation of 5 cents on the $100 provided for in section 4 of that act is concerned, the contention is sound, and we cannot and shall not, by our judgment in this case, interfere with that taxation or its collection; but section 21 of the same act provides that any road constructed or reconstructed under its provisions shall forever be a county road, and "the duty of keeping the same in repair devolves upon the fiscal court of the county to be maintained out of the general county fund as provided by law, and all other powers and duties respecting such road shall be imposed upon and invested in the said fiscal court." This act refers to state aid roads, which constitute only a small per cent. of the county roads. The expense of

maintaining the roads not aided by the state is, of course, a county matter. It is thus quite clear that the taxation imposed by the fiscal court of a county, for the purpose of constructing or reconstructing roads is a county expenditure, and not a state indebtedness, and, consequently, that the school tax decision has no bearing upon the question.

The demurrer to the answer is sustained, and if the defendants do not answer further, or manifest a desire to do so, judgment, as prayed for, will be entered.

Helm Bruce, of Louisville, Ky., for plaintiffs in error.

W. O. Harris, of Louisville, Ky., and Lewis Apperson, of Mt. Sterling, Ky., for defendants in error Apperson and Sterling Land & Inv. Co.

L. A. Faurest, of Elizabethtown, Ky., for defendants in error Creager, Gardner, and Hocker.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

PER CURIAM. It is here sought to reverse five judgments in mandamus. They were rendered in separate cases, which involved the same questions and were decided at the same time. The proceedings in error were heard together here and are passed upon in this opinion. The plaintiffs in error constitute the fiscal court of Taylor county, Ky., and the peremptory order in each case in terms requires them and their successors, if any, in office: (1) To convene the court at stated times in 1916, 1917, and 1918, and to levy a tax upon the taxable property of the county, payable in three annual installments, sufficient in the aggregate to pay certain unsatisfied judgments which the defendants in error had severally recovered against the county; (2) to place the appropriate tax bills for collection under each levy in the hands of the sheriff, and his successor, if any, in office; and, upon failure of the sheriff to qualify, the order in each instance directs (3) the county judge, and his successor, if any, in office, constituting the county court, to take steps necessary to collect such tax when appointing a collector of taxes.

[1] The cases, except as to a road tax, are controlled by the decisions of this court in Tucker v. Hubbert, 196 Fed. 849, 117 C. C. A. 365, and Graham v. Quinlan, 207 Fed. 268, 124 C. C. A. 654, unless error was committed, as counsel claim, in the decision in Graham v. Quinlan. The contention is that we there erroneously construed the decision in Commonwealth v. Moody, 150 Ky. 571, 150 S. W. 680, touching the effect of an amendment made March 15, 1906, to section 4131 of the Statutes of Kentucky. Acts 1906, p. 153, § 3; 2 Ky. Stat. (Carroll Ed.) 1915, § 4131(3). The error so claimed concerns a further portion of each order. These orders also provide in substance that when the county judge, or his successor, if any, in office, shall appoint a collector of taxes, he shall embrace in the order of appointment a direction to the officer to collect in addition to the usual levies of taxes also the levies to pay the judgments mentioned, and shall exact of the collector a single bond to secure collection of all the levies. Each order, however, excepts any levy made by the

fiscal court for school purposes, and also "the five cents on each one hundred dollars of state revenue for the construction of public roads."

In Graham v. Quinlan, 207 Fed. at page 272, 124 C. C. A. 654, we considered the decision in the Moody Case, and we do not see any sufficient reason to change the views we there expressed, either as to that decision or the effect of the amendment of 1906. It is true that the amendment in terms relieves the collector of any duty "to give bond for and collect" taxes not "mentioned or provided for in the order of the county court appointing him." Before the amendment no special certification of the county levy was required to be made to the sheriff or collector in order to make the tax collectible by either; it was the duty of each to take notice of levies made by the fiscal court, and to collect and apply the taxes; and the failure of either to do so rendered the defaulting official responsible under his bond. Commonwealth v. Wade's Adm'r, 126 Ky. 791, 801, 104 S. W. 965. The amendment was in form appropriate to ameliorate this condition at least as to the collector. It relieved him, as well as his sureties, from the peril of overlooking existing levies; but the language fails to indicate any purpose to do more than this, save only to impose upon the county court a duty of certification of levies when appointing a collector. The amendment did not change the purport or effect of any levy itself. A tax levy imports a necessity for its existence and a purpose to collect it. The power to impose a tax would be futile in the absence of effective means for its collection. Upon the sheriff's failure to qualify, the county judge, in his capacity as the county court, is empowered to appoint a collector of taxes; and the amended section, by clear implication, devolves a duty upon the county court exercising this power to provide in its appointing order for the collection of the existing county tax levies. This, as it seems to us, is the natural import and meaning of the amended section in its entirety, and, consequently, is expressive of the legislative intent.

It is insisted, however, that the amendment empowers the county court to appoint two or more collectors, and to mention or provide for the collection of such taxes, and such only, in the several orders of appointment, as the court shall deem fit; and, aside from the road tax before alluded to, this is the effect of the only defense here offered. It is particularly to be noticed that no objection is made to the portions of the peremptory orders that require levies to be made to pay the unsatisfied judgments. The complaint is that the orders collectively, as well as separately, restrict the county court to the appointment of a single collector with a single bond. Certainly the words comprised in the amendment itself do not in terms vest any appointing power. The right to appoint a plurality of collectors of taxes ought to be traceable to some distinct legislative authority. The only language expressly creating the power of appointment is contained in the old portion of section 4131 and remains unchanged; and, as already indicated, the construction which that language received in the Wade Case, 126 Ky. 799, 104 S. W. 965, limiting the power of appointment to a single collector to collect the county reve-

nue, including any special assessment, ought to be followed, unless the decision in the Moody Case requires a different construction. The only issue involved in the Moody Case was whether Moody, who had been appointed as a special tax collector after the amendment of 1906, was responsible for failure to collect a tax not mentioned in his order of appointment. Plainly, this did not call for a construction of the appointing power; it concerned only the effect of omission to mention a particular tax in an appointing order. It is clearly to be inferred from the records in the instant cases, not to speak of the records in Tucker v. Hubbert and Graham v. Quinlan, that no person would accept an appointment and furnish a bond, with responsible sureties, to collect simply and solely a tax levy to pay these judgments; in short, the logic of the interpretation urged in behalf of plaintiffs in error is to impute to the Legislature a purpose to sanction repudiation of acknowledged county indebtedness. We cannot accept this view. We cannot believe that language appropriate to require certification of tax levies to a tax collector for the protection of himself and his sureties was intended also to justify multiplying collectors and distributing the items of levy among them at the will or the caprice of the appointing official.

The complaint at bottom is not that the services in themselves are too great for a single collector; it is that they are affected by the existence of bitter opposition to payment of these unsatisfied judgments. The circumstance that such hostility prevails in a particular county against a single item of its tax levy cannot stand as a warrant for severance of the levy. The statute is a general law, and must have uniform operation throughout the state. The plaintiffs in error cannot be heard both to concede the levy to pay these judgments to be right and affirm its collection to be wrong. Simple justice and good conscience, as also the law, require provision to be made for a single agency and guaranty to collect this tax as a unitary portion of the regular county levy; and if collection of those portions of the levy which the taxpayers are willing to pay cannot be effected in this way, the fault must lie with the county itself. Our conclusion, of course, renders it unnecessary to consider the question determined below whether the effect of the amendment was to destroy an existing remedy, without substituting one equally efficacious, to enforce collection of the judgments, and so operated to impair the contracts.

[2] It remains to consider whether the road tax to which allusion has been made is a state tax, and not a county tax. Here again counsel lay stress upon the question of collectorship. If the tax is a county tax, its collection will fall within the province of the county tax collector; but, if it is a state tax, its collection must be made through the state tax collector, who appears to have been appointed by the county court January 24, 1916. The road tax is one of the items of the general county levy, to wit:

"That thirty-five cents on each one hundred dollars, as assessed and equalized for taxation for the year 1916, be used for building bridges and maintaining the county roads of Taylor county for the year 1916, four thousand six

hundred dollars ($4,600) be used in connection with like sum from the state for the purpose of continuing the work on the state roads in the aforesaid county, which are now under construction."

It is the item of $4,600 thus provided for that is in dispute. The statutes that are pertinent here were enacted by the Legislature of Kentucky on March 24, 1914; and since the first act is dependent for its execution upon the second, the two acts must necessarily be considered together. One is entitled "An act declaring certain public roads a system of public state highways, and public works of the state of Kentucky." The other statute is entitled "An act to create and establish a system of public state roads and to provide for the construction and maintenance thereof." Acts 1914, pp. 440, 441; 2 Ky. Stat. (Carroll Ed.) 1915, §§ 4356w, 4356x. The first of these acts provides that the system of highways to which it in terms relates shall consist of roads connecting county seats of adjoining counties within the state, and also county seats of state border counties with those of adjoining counties in the adjacent states. The second act invests the commissioner of public roads with general supervision of all public roads and bridges that "are being constructed, improved or maintained in whole or in part by aid of state money," and would seem to include roads designed to connect county seats provided for in the first act (subsections 1 and 2 of second act). Further provision is made for raising money through taxation for the purpose of furnishing such state aid and for apportioning the money among the several counties applying for state aid. It is not necessary to recite the details of the second act, since it distinctly provides (subsection 21):

"Any road constructed or reconstructed under the provisions of this act shall forever hereafter be a county road and the duty of keeping the same in repair devolves upon the fiscal court of the county to be maintained out of the general county fund as provided by law, and all other powers and duties respecting such road shall be imposed upon and invested in the said fiscal court."

Thus the plan, considered as an entirety, would seem to provide for state aid of county roads rather than county aid of state roads. It is true that both of these acts in general terms call the roads there mentioned "public state highways," yet this is consistent with the specific provision, just quoted, which expressly invests every such road with the characteristics of "a county road," and provides for their maintenance later by the several fiscal courts of the counties. It was manifestly quite as competent for the lawmaking body to provide that these highways should each be a county road as it was to provide that they should receive state aid. All public roads are in one sense state highways, since the general rule is to provide for their construction, improvement and repair through local agencies created in pursuance of legislative enactment; but here the purpose to treat these highways as local roads is distinct. It results, we think, that taxes levied, as here, by county agencies, are county taxes, and are to be collected by the county tax collectors.

We discover nothing in the statutes in question which would pre-

vent any of the counties from securing such state aid under levies and collections of taxes made through purely county agencies. Indeed, the facts alleged in the pleadings of the instant cases, and by general demurrer admitted, set out a plan to secure state aid under these statutes through appropriation and use of the $4,600 in dispute. The plan relates to "the improvement of three (named) roads," which are designed to connect the county seat of Taylor county with the county seats of certain adjoining counties. The aid sought is under an arrangement alleged to have been made with its officials whereby the state is to contribute a like sum ($4,600) for the same object. In other words, the total sum of $9,200 is intended to be secured and applied toward the improvement of these roads. Unless the desired aid is to be obtained in this way, it cannot under the present records be secured. If the plan of Taylor county had been to issue bonds under the acts sufficient to procure the total sum desired ($9,200), and to use the money in the improvement of the three roads before applying for state aid, the county might, after executing the plan, have secured state aid to the same extent as it now proposes, and then have applied the sum so received from the state to ordinary county objects (Mitchell v. Knox County Fiscal Court, 165 Ky. 543, 550-553, 177 S. W. 279); and this tends strongly to support the conclusion that the road tax in question is a county tax, and not a state tax.

The claim of analogy between the instant tax and an ordinary school tax fails. The road tax originates with the fiscal court; the school tax, with the board of education. The object of the road tax is to construct or improve county roads; the object of the school tax is to procure and support an exclusively state system of public schools. City of Louisville v. Commonwealth for School Board, 134 Ky. 488, 494, 121 S. W. 411; Ramsey v. County Board of Education, 159 Ky. 827, 831, 832, 169 S. W. 521.

It follows that the judgment in each of the cases must be affirmed, with costs.