**ATLANTA LIFE INS. CO. v. CORMIER.**

No. 9820.

Court of Civil Appeals of Texas. Galveston.
Dec. 15, 1932.

Dissenting Opinion Jan. 13, 1933.

Rehearing Denied Nov. 14, 1935.

Ross, Wood, Lawler & Wood, of Houston (Virgil Childress and Lawler, Wood & Childress, all of Houston, on motion for rehearing only), for appellant.

John J. Sargent, of Houston, for appellee.

LANE, Justice.

On the 11th day of March, 1929, the Atlanta Life Insurance Company, hereinafter referred to as defendant or Insurance Company, in consideration of 42 cents paid to it by Nat Cormier, sometimes called and known as Arnotole Connier, and the further sum of 42 cents to be paid weekly through his life, the Insurance Company executed and delivered to Arnotole Cormier its policy of insurance, whereby it insured the life of Arnotole Cormier in the sum of $500 for the benefit of Marjorie Cormier, his wife, who is named in the policy as beneficiary.

Arnotole Cormier died on the 9th day of April, 1931. Up to the time of his death the insured had paid all premiums due on the policy.

Marjorie, the widow of Arnotole Cormier, named as beneficiary in the policy, after the death of her said husband, filed this suit against the Insurance Company to recover on the policy issued by it. She alleged the facts stated in our preliminary statement, and also alleged that the insured had in all respects complied with the provisions of the policy. She alleges that defendant had refused to pay the sum due on the policy, and therefore she was entitled to 12 per cent. penalty as provided by law, and that by reason of such refusal she was compelled to employ an attorney to force collection of the sum due her; that she had employed John J. Sargent, an attorney, to bring this suit, for which, since she had promised to pay her attorney the sum of $150, she prayed to recover the several amounts named.

Defendant answered by general denial and specially alleged that by paragraph 4 of the policy it is provided as follows: "4. No death benefit shall be payable hereunder when death is the result of immorality, or a disease contracted prior to the date hereof, or of resisting the legal execution of law, or legal authority by the insured, or when death is the result of suicide, it being understood and agreed to that death resulting from these causes, or any one of them, is not a risk undertaken or assumed under this policy of insurance."

It then alleges that insured contracted a disease before said policy was issued from the effects of which he died.

The case was tried before the court without a jury, and judgment was rendered for the plaintiff for $500, the face of the policy, 12 per cent. penalty, and for $100 attorney's fee.

Defendant has appealed.

Upon the request of the defendant therefor, the court filed his findings of fact and conclusions of law.

The court found that the policy was issued at the time and for the purpose stated in our preliminary statement; that all premiums due on the policy up to the

time of the death of the insured were paid; that notice was given of the death of insured, and proof of death made, and due demand was made upon defendant for payment of the policy, and such demand was refused; that the policy, among other provisions, contained paragraph 4 under the head of "Conditions," which is copied above; that on the date of the issuance of the policy and prior thereto insured was affected with epilepsy, which continued up to the time of his death on April 9, 1931; that while the policy was issued to Arnotole Connier, he was known as Nat Cormier; that no copy of the application for the insurance made by insured was ever attached to the policy; that at the time of the death of insured the policy was in full force and effect; that all weekly premiums due on the policy were paid to agents of defendant; that defendant at no time made complaint of any fraud practiced on it in the procurement of the policy and it made no offer to cancel the same on account of fraud or deception; that the policy had been in full force and effect for more than two years from the date it was issued.

### Conclusions of Law.

"I conclude as a matter of law that under the statutes after the expiration of two years, this policy was uncontestable, therefore the plaintiff is entitled to recover the amount of the policy, plus interest at the rate of six per cent. per annum from the date of the death of the insured until payment, together with twelve per cent. penalty and attorney fees in the sum of one hundred ($100.00) dollars, and judgment has been entered accordingly. Feb. 3, 1932.

"Roy F. Campbell, Judge."

Appellant, for cause of reversal of the judgment, contends that death caused by a disease contracted prior to the date of the insurance policy was a risk not assumed, insured against, or covered by the policy of insurance in question, and since the death of the insured was caused by a disease existing prior to and at the date of the policy, appellee was not entitled to any recovery on the policy; that as the death of the insured was the result of a disease existing at the time of the issuance of the policy, such death constituted no risk assumed thereby, and therefore section 4, under the subhead, *"Privileges and Concessions to Policyholders,"* is without application.

We have already quoted paragraph 4 of the policy under the subhead "Conditions" and will not repeat it here.

One of the provisions of the policy is as follows: "This policy shall not take effect if the insured die before the date hereof; or if on such date the insured be not in sound health; but in either event, the premiums paid hereon, if any, shall be returned."

Paragraph 7 under subhead "Conditions" is as follows: "7. Should the insured die while engaged in military or naval service in time of war, or as a result of having been so engaged, the amount insured hereunder shall be the amount of premiums paid hereon, less 25%."

Paragraph 4 under subhead "Privileges and Concessions to Policyholders," is as follows: "4. Subject to the restrictions as to military or naval service as contained herein, this policy shall be incontestable after two years from date, except for fraud, non-payment of premium, or misstatement of age."

Evidently, we think, appellant in writing its form of policy such as the one under consideration was undertaking by the insertion of the paragraph last quoted, to comply with the provisions of subdivision 3 of article 4732 of our Civil Statutes, wherein it is provided that a policy issued in this state *"shall be incontestable not later than two years from its date, except for nonpayment of premiums;* and which provision may or may not, at the option of the company, contain an exception for violations of the conditions of the policy relating to naval and military services in time of war." (Italics ours.)

There is no contention made that any fraud was practiced on the company inducing the issuance of the policy, nor is there any contention that there were any premiums unpaid, or that the age of the insured was misstated to the company.

The company by virtue of the last paragraph quoted said to the insured: *"Subject to the restrictions as to military or naval services as contained in the policy, the policy shall be incontestable after two years from its date for any reason, except for fraud, non-payment of premiums, or misstatement of age."*

That insured was not in sound health at the time the policy was issued is not one of the exceptions named in the incontestable clause, nor is the provision of par-

agraph 4 first quoted one of such exceptions.

Appellant was advised about a year before the insured died that he was suffering with epilepsy, and that his condition was such that he had to be confined in Rusk Institute; notwithstanding such knowledge, they continued to collect from the beneficiary the premiums due up to the time of the death of the insured.

Mrs. Cormier, the beneficiary named in the policy, testified: That insured was sent to the Rusk Institute on the 1st day of May, 1930, and that she notified defendant's agent who collected the premiums of the fact that insured had been sent to the institute; that thereafter such agent continued to collect premiums due on the policy up to the time insured died on April 9, 1931; that such agent advised her to keep up the payments and told her that she would be foolish if she let the premiums lapse; that "they fully knew of the whereabouts and the conditions up to that time of insured"; that they knew that insured had been put in jail and they knew the truth about it; and that they took the premiums every week thereafter until the insured died.

Such testimony stands in the statement of facts undisputed.

We have reached another conclusion not hereinbefore stated; that is, that the company in the issuance of the policy intended to and did contract with the insured to make the policy incontestable in the event he paid all premiums when due for more than two years from the date of the policy, notwithstanding that he might have been at and before the policy was issued of unsound health, perhaps under belief that if he lived more than two years after having contracted the disease from which he suffered it would probably not result in his death, and also under the belief that it would be an inducement to insured to accept the policy.

We have reached the conclusion that the policy sued on, at the time of the death of the insured, was incontestable.

We conclude that appellant's contention that the defense interposed by it is not a contest of the policy, but only an assertion that the death of the insured, as it occurred, was not a risk assumed by the policy, is unsound.

We think our conclusion that the policy, under the facts shown, was incontestable

at the time of the death of the insured and that the defense interposed by appellant is a contest of the policy is supported by the following authorities: American National Ins. Co. v. Tabor, 111 Tex. 155, 230 S.W. 397, 398; American National Ins. Co. v. Welsh (Tex.Com.App.) 22 S.W.(2d) 1063, and American National Ins. Co. v. Briggs (Tex.Civ.App.) 156 S.W. 909, and other cases cited by appellee.

In American National Ins. Co. v. Tabor, supra, Judge Greenwood of our Supreme Court quotes subdivision 3 of article 4732, Revised Civil Statutes, as follows: "3. A provision that the policy, or policy and application, shall constitute the entire contract between the parties and shall be incontestable not later than two years from its date, except for nonpayment of premiums; and which provision may or may not, at the option of the company, contain an exception for violations of the conditions of the policy relating to naval and military services in time of war."

He then said:

"The policy before us departs from subdivision 3 in that it allows the insurer to contest same for fraud, after two years, though all premiums have been paid. It was the obvious purpose of subdivision 3 to prescribe two years as a maximum period of limitation, after which no defense should be allowed to defeat payment of the policy, except nonpayment of premiums, or violations of conditions relative to naval or military services during war. The subdivision allows the insuring company to fix a period of time, not to exceed two years, during which it may make fully available to itself all the legal consequences of fraud which ought to be discovered through the exercise of proper diligence; but, after the expiration of the period fixed, the subdivision eliminates all defenses, save those specially mentioned.

"The parties could not, by contract, put something into the policy which was repugnant to the mandatory statute, and thus destroy a benefit to the insured which the statute was designed to guarantee. Hence the attempted reservation by the insurer of the right to interpose fraud by way of defense to a suit to enforce payment of the policy after it had been issued more than two years was void."

In American National Ins. Co. v. Welsh, 22 S.W.(2d) 1063, 1064, in a decision by the Commission of Appeals, it is said in speaking of subdivision 3, article 4732,

and citing the Tabor Case with approval: "The meaning and effect of these provisions were to prescribe two years as the maximum period of limitation, after which no defense, except nonpayment of premiums or violations of conditions relative to naval or military service during war, should be allowed to defeat payment of a life policy. American Nat. Ins. Co. v. Tabor, 111 Tex. 155, 230 S.W. 397. These provisions first became law in the year 1909. See section 22, chapter 108, Acts of 1909. By operation of law, they are read into and control the terms of every policy issued by a domestic life insurance company, after December 31, 1909."

■ By section 4 under subhead "Conditions" of the policy, it is stated that no death benefit shall be payable where the death is caused by a disease which existed prior to the date of the policy. Appellant argues that the death of the insured was shown to have been caused by such pre-existing disease, and that it was not covered by the terms of the policy, but expressly excluded therefrom.

Such argument is predicated upon a fact to be proven which does not appear upon the face of the policy, to wit, the fact that the insured died from a pre-existing disease. The company is not allowed to set up such a defense after more than two years from the date and delivery of the policy. If appellant's construction be allowed, instead of being an incontestable policy it would always be contestable. A construction which reads into a policy as permanent provisions the very conditions which apparently it was desired to terminate makes it not only inoperative but exceedingly deceptive, for while the causes which serve as an inducement to the applicant and remove his unwillingness to accept a policy containing many conditions about which it might be defeated, the contract would still hold him rigidly to such warranty and condition contained in it notwithstanding the incontestable clause. Such a result may be avoided by construing the incontestable clause that if the policy does not mature or terminate within two years but during that time is outstanding in the hands of the insured and is utterly void on its *face,* and is not avoided by the company but is acted upon by both parties as a subsisting contract, it is in continuous force within the true meaning of the clause. Southern Life Ins. Co. v. White (Tex.Civ.App.) 188 S.W. 266.

For the reasons above expressed the judgment of the trial court is affirmed. Chief Justice PLEASANTS dissenting.

Affirmed.

PLEASANTS, Chief Justice (dissenting).

I agree with appellant that under the contract upon which appellee's suit is based, she has no claim against appellant for the death of the insured, which the undisputed evidence shows resulted from a risk not insured against by the insurance policy, but expressly excepted by the policy from the obligation assumed by appellant.

I cannot agree with the trial court and my associates that this express nonliability of appellant, for the death of the insured resulting from a disease contracted before the policy was issued, is destroyed by the provisions of the policy set out in the opinion of the majority of this court which makes the policy incontestable after two years from its date except upon grounds stated in the quoted provisions, none of which are claimed by appellant to exist.

It seems clear to me that appellant's insistence that the policy does not cover the risk which resulted in the death of the insured is not a "contest" of the policy as that term is used in the incontestable provision contained in the policy and in subdivision 3 of article 4732, Revised Statutes (1925). I do not think the opinion of our Supreme Court in the case of American Nat. Insurance Company v. Tabor, 111 Tex. 155, 230 S.W. 397, 398, sustains the conclusion of the majority. The able and learned justice who wrote that opinion was only discussing defenses to a policy which if not presented within two years from date of the policy would, under the terms of the statute, become barred by limitation, and not an express exception of a risk from those assumed by the policy. There is no intimation of fraud in this record, and so far as the record shows appellant may have known at the time the policy was issued that the insured had contracted the disease which finally resulted in death. The deceased knew that he had such disease, and is charged with knowledge of the fact that his policy did not cover death resulting from that disease. In this situation, the statute was not intended to prevent the parties from contracting for insurance against death from any other cause than that excepted from the policy. Certainly no sound public policy could be subserved by so re-

stricting the right of private contract. There is no ambiguity or uncertainty in the language used in the several provisions of the policy, and no reason for the application of the rule requiring a doubtful meaning of the language of a contract to be construed against its writer. An insurance contract, like all contracts, should be construed in accordance with its plain terms. Continental Casualty Company v. Wade, 101 Tex. 102, 105 S.W. 35; Brown v. Palatine Insurance Company, 89 Tex. 590, 35 S.W. 1060; Howard v. Missouri State Life Insurance Company (Tex.Civ.App.) 289 S. W. 114; Green County v. Quinlan, 211 U. S. 582, 29 S.Ct. 162, 53 L.Ed. 335; United States v. Ansonia Brass Co., 218 U.S. 452, 453, 31 S.Ct. 49, 54 L.Ed. 1107.

It seems obvious to me that the incontestable provision in the policy relates only to risks assumed and liabilities incurred by the issuance of the policy and cannot affect a risk not assumed by the policy. Howard v. Missouri State Life Insurance Company, supra; Wright v. Federal Life Ins. Co. (Tex.Com.App.) 248 S.W. 325; Mack v. Connecticut Insurance Company (C.C.A.) 12 F.(2d) 416; Hearin v. Standard Life Insurance Co. (D.C.) 8 F.(2d) 202; National Life Insurance Company v. Jackson, 161 Ark. 597, 256 S.W. 378.

In my opinion the judgment of the trial court should be reversed and judgment here rendered in favor of appellant.