LLOYD H. DIEHL, PETITIONER, ET AL.,[1] *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 104152–104160.    Promulgated December 1, 1942.

*J. Marvin Haynes, Esq., Grant L. Cook, Esq.*, and *Harold C. Beake. Esq.*, for the petitioners.

*P. M. Clark, Esq.*, and *E. L. Weber, Esq.*, for the respondent.

---

[1] Proceedings of the following petitioners are consolidated herewith: Irene E. Diehl; Edward W. Diehl; Ruth R. Diehl; Walter E. Ritter; Edna M. Ritter; Howard A. Church; Herbert F. Doolittle; and Edward F. Tannewitz.

OPINION.

Arnold, *Judge:* The respondent determined that the payment of $1,348,000 by the Gasket Co. to the Crown Co. was an ordinary dividend but applied to the discharge of petitioners' obligation to the Crown Co. for the balance of the purchase price of the 164,250 shares of stock of the Gasket Co., and that therefore such dividend, to the extent of $832,196.08, earnings available on March 13, 1936, for the payment of dividends, represented taxable income to petitioners measured by the number of shares of Crown Co. stock held by each of them. By amended answer respondent alleged that earnings of the Gasket Co. available for dividends amounted to at least $1,348,000 and that each petitioner's share thereof should be increased proportionately, and he claimed increased deficiencies accordingly. On brief the respondent submits that, since the tax liability of petitioners is based upon the satisfaction and discharge of their liability by the Gasket Co., the amount of earnings of the Gasket Co. available for dividends is immaterial, the tax liability of petitioners being the same whether the company had earnings available for dividends or not.

The respondent's theory is based primarily on certain language of the agreements entered into between the Crown Co. and the Diehls. He calls attention to the part of the contract giving the Diehls the right to purchase the 164,250 shares of Gasket Co. stock "as then [at the time of the execution of the option agreement] constituted, or as the same might later be reconstituted, for the sum of $2,628,000.00"; to the provision permitting payment of $1,348,000 by the Gasket Co. as a dividend to the Crown Co., which permission "shall not in default of payment by the Gasket Company release you [the Diehls] from the payment of the same in accordance with the agreement of December 16, 1935, as amended" by the agreement of January 16, 1936; and to the reference in the agreements to the 40,000 shares of Crown Co. stock "as part of the purchase price" and to the reference to the $1,348,000 as the "balance of said purchase price." It is a well established rule in construing contracts that particular words or phrases may not be "isolatedly considered, but that the whole contract must be brought into view and interpreted with reference to the nature of the obligations between the parties, and the intention which they have manifested in forming them." *O'Brien v. Miller*, 168 U. S. 287, 297; *Green County, Kentucky* v. *Quilan*, 211 U. S. 582, 594. It is also well estab-

lished that the construction placed upon a contract by the parties to it should be given great weight, the United States Supreme Court, in *Insurance Co.* v. *Dutcher*, 95 U. S. 269, 273, stating in that regard: "There is no surer way to find out what the parties meant, than to see what they have done."

Notwithstanding the statements and phrases in the contract relied upon by the respondent to support his theory, a careful consideration of the agreement, as amended, as well as the action of the parties in carrying out the agreement, discloses two plans, under either of which the Diehls could acquire the Gasket Co. stock from the Crown Co. Under one plan the Diehls had the option of purchasing the entire outstanding issue of the Gasket Co. stock, then represented by 164,250 no par value shares owned by the Crown Co., for 40,000 shares of Crown Co. stock at an agreed value of $1,280,000 and $1,348,000 cash. Under the other plan, the one followed in closing, the Gasket Co. was to be recapitalized by increasing its common stock to 300,000 shares of $1 par value and 62,500 shares of $20 preferred, the preferred and 50,000 shares of the common to be sold and the proceeds, to the extent of $1,348,000, paid to the Crown Co. by way of a dividend by the Gasket Co. in lieu of the cash payment by the Diehls.

Thus, under the first plan the Diehls would receive 164,250 shares representing the entire outstanding capital stock of the Gasket Co., while under the second plan they would receive the same number of new shares, representing a portion only of the outstanding shares.

On February 10, 1936, the Gasket Co. declared a dividend of $1,348,000 payable to stockholders of record of February 20, 1936. On February 19, 1936, the Crown Co. exchanged its 164,250 no par value shares of Gasket Co. stock for the same number of new $1 par value shares. The Crown Co. was the sole stockholder of record of the Gasket Co. on February 20, 1936. On March 13, 1936, the Gasket Co. received from the bankers $1,800,000 from the sale of additional stock under the agreement of January 28, out of which and on the same day it paid the dividend of $1,348,000 to the Crown Co., and the Diehls received not the stock representing the entire outstanding issue, for which they agreed to pay $2,628,000 under the first plan, but the same number of shares diluted by the issuance and sale of the additional preferred and common stock. It must not be overlooked that, although the Diehls and immediate associates managed the Gasket Co. as officers and directors, they were not stockholders of the Gasket Co. from 1931 until the time of the completion of the agreement of March 13, 1936. What the Diehls and associates did as officers and directors of the Gasket Co. to cause it to recapitalize, sell part of its stock, and pay the dividend of $1,348,000 was done by them not as owners of the company, but pursuant to the express permission of and authorization by the Crown Co., the sole stockholder of the Gasket Co.

It was left to the decision of the Diehls and associates whether they desired to take the old stock of the Gasket Co. or the new stock. But in the event they decided to take the new stock they were not obligated to pay the $1,348,000 under the agreement, except in default of payment by the Gasket Co. If the Gasket Co. defaulted, the second plan became inoperative or ineffective and the deal would necessarily have to be closed under the first plan. The language of the agreement, viz:

* * * permitting such payment to be made by said Detroit Gasket & Manufacturing Company shall not in default of payment by the Gasket Company release you [the Diehls] from the payment of the same in accordance with the agreement of December 16, 1935, * * *

together with other provisions of the agreement, is clearly amenable to such a construction. To construe the agreement so as to impose an obligation upon the Diehls and associates for the payment of the $1,348,000, whether they received the 164,250 shares of old stock or 164,250 shares of the new stock after payment of the dividend by the Gasket Co. is unwarranted.

If the Diehls received an economic benefit in the amount of $1,348,000 by reason of the dividend discharging their obligation to that extent, as contended by the respondent, that benefit would necessarily have to be represented in the value of the 164,250 shares of new stock received by the Diehls from the Crown Co., as that is all they received in the transaction as closed. Shares of stock represent an interest on the assets of a corporation and right to share in earnings and profits in the proportion that the number of shares held bears to the entire number of shares issued and outstanding. No business man would bind himself to pay the same price for the 164,250 shares of new stock of the Gasket Co. after payment of the dividend that he would have paid for the same number of shares of the old stock. The parties placed a value of $16 a share on the old stock. ($2,628,000 purchase price÷164,250, total number of shares outstanding.) The Gasket Co. received $1,800,000 on the sale of some of its new common and preferred stock. Adding this amount to the agreed value of the old shares and deducting from the total the dividend of $1,348,000 and the par value of the 62,500 shares of preferred stock at $20 a share, there remains a balance of $1,830,000 applicable to the common stock. Dividing this amount by 214,250, the number of shares of new common stock outstanding after the second plan was consummated, gives a quotient of approximately $8.54. Thus the value of the new stock was about half of the agreed value of the old stock. While the above method may not accurately measure the value of the new stock, it fairly illustrates the probable difference in value between the old and the new stock. It is obvious that there was a substantial difference in the value of the old stock and the same number of shares of new stock after the payment of the dividend and

the issuance of 50,000 additional shares of common stock and 62,500 shares of preferred. The petitioners received no monetary benefit or enrichment as a result of the payment of the dividend by the Gasket Co. to the Crown Co. The Diehls under the second plan were obligated to pay the $1,348,000 only if the Gasket Co. defaulted, i. e., if the second plan failed, or if the first plan was adopted and consummated. In either event the assets of the Gasket Co. would not have been depleted to the extent of $1,348,000.

In *Old Colony Trust Co.* v. *Commissioner*, 279 U. S. 716, cited by respondent, the taxpayer's employer paid taxpayer's income taxes as additional compensation for his services. In that case the Court held that the amount of the taxes paid by the employer was paid by the employer "in consideration of the services rendered by the employee, and was again derived by the employee for his labor." It was held in that case that the taxpayer received income not merely because the employer paid his tax obligation but because the taxpayer received, although constructively, "income derived from salaries, wages, or compensation for personal service", as defined in section 213 of the Revenue Act of 1924. In *United States* v. *Hendler*, 303 U. S. 564, the transferee of taxpayer assumed and paid its bonded and other indebtedness, as a result of which the Court held that the gain realized by the transferor was recognizable under the provisions of 112 of the Revenue Act of 1928 to the extent of the amount of the indebtedness, since the gain to that extent was neither "stock or securities" nor distributed to its stockholders "in pursuance of the plan of reorganization." The Court also held that the amount assumed and paid by the transferee was income to the transferor as though the amount had been paid directly to the latter, since it was "the beneficiary of the discharge of its indebtedness." Herein the petitioners were neither obligated to pay the $1,348,000 under the plan as adopted and consummated, nor received any monetary benefit from the payment of that amount by the Gasket Co. It would serve no useful purpose to discuss other cases cited by the respondent. They are either not applicable or are distinguishable, and they were determined upon their own peculiar facts.

In view of our conclusion it is not necessary to consider or determine the amount of earned surplus of the Gasket Co. available for dividends or whether the amount thereof would have been material if the petitioners had derived income taxable to them from the transaction involved.

*Decision will be entered under Rule 50 in Docket Nos. 104152, 104154, 104159, and 104160; and for the petitioners in Docket Nos. 104153, 104155, 104156, 104157, and 104158.*